SARTIN, CIRCUIT CLERK, *v.* BARLOW, Dist. Atty., *ex rel.* SMITH.

(In Banc. Jan. 24, 1944.)

[16 So. (2d) 372. No. 35530.]

**J. M. Alford,** of Tylertown, and **Hall & Hall,** of Columbia, for appellant.

**T. B. Davis,** of Columbia, for appellees.

**Griffith, J.,** delivered the opinion of the court.

Relator was one of the two candidates for member of the board of supervisors for District No. 1 of Walthall County at the second primary held on Tuesday, August 24, 1943. The result, looking alone to the returns made by the precinct managers for the three boxes in the district, was that relator's opponent was nominated by a majority of one vote. At the polls relator had challenged the vote of one Norris on the ground that Norris had not been a resident of the state for two years. The County Democratic Executive Committee met on Wednesday morning following the election. Relator was present and again challenged the vote of Norris, which it is admitted was cast for relator's opponent, but the committee overruled the protest and declared the nominee according to the stated returns.

Relator did not have any information at that time sufficient to form the basis of a protest of any irregularities or illegalities in the election other than the receipt of the illegal vote of Norris; but during the week following, relator obtained information deemed reliable that there were many other illegalities and irregularities of a serious nature in the conduct of the election, wherefore on August 30, 1943, he gave notice, duly served personally on his opponent, that, on September 3, 1943, he would examine the boxes in the presence of the circuit clerk, as provided by law. The provision of the law on that subject, as found in Sec. 7, Chap. 19, Laws 1935, Ex. Sess., is as follows: "At any time within twelve days after the canvass and examination of the box and its contents by the executive committee, any candidate or his representative authorized in writing by him, shall have the right of full examination of said box and its contents upon three days' notice of his application therefor served upon the opposing candidate or candidates, or upon any member of their family over the age of eighteen years, which examination shall be conducted in the presence of the cir-

cuit clerk or his deputy who shall be charged with the duty to see that none of the contents of the box are removed from the presence of the clerk or in any way tampered with; upon the completion of which examination the box shall be resealed with all its contents as theretofore. And if any contest or complaint before the court shall arise over said box, it shall be kept intact and sealed until the court hearing and another ballot box, if necessary, shall be furnished for the precinct involved.''

When relator on the day and at the hour set appeared at the clerk's office to make the examination, the clerk, respondent here, refused to permit relator to make the examination or to have any access to the boxes whatever. Thereupon relator informed the district attorney 'of the district of what had happened, and that officer immediately filed a petition for a writ of mandamus against the said clerk to compel him to perform and to permit to be performed what the law so clearly required of said clerk, and the circuit judge fixed an early day, to wit, September 11, 1943, as the date upon which said petition would be heard in vacation.

Upon the hearing held on said day, the respondent clerk made the excuse, if it may be euphemized as such, that he had been directed in writing by the chairman of the County Democratic Executive Committee not to permit the examination, and that worthy gave as his excuse for so directing, that relator had been offered a recount on the morning following the election, which offer relator had not then accepted. This matter of the examination of the boxes under the quoted statute was one with which the chairman of the county executive committee had nothing to do, and it is neither within the language nor the purpose of the quoted provision that any offer, such as mentioned, whether made on the first or any other day after the election, shall bar the right of examination conferred by the statute. It is seldom the case that a candidate will have at or immediately following an election the information which will or may come to him in

the days following, and the statute expressly allows twelve days; and if such an offer made during the first few days after the election were held to bar the right of examination, a corrupt or partisan executive committee could easily so manipulate the offer so as to make the examination abortive and ineffective. Appellant, the respondent clerk, has not followed up his suggestion that the right of examination was barred by estoppel or waiver, because of the specious offer above mentioned. He has submitted no authority in support of it, and, upon our own investigation, we find none such. To the contrary, we may cite a much stronger case, Johnston v. State ex rel. Sefton, 128 Ind. 16, 27 N. E. 422, 423, 12 L. R. A. 235, 237, 25 Am. St. Rep. 412. In that case there was a tie vote. The law required, in such case, that the election be determined by lot. Relator at first objected to this course being taken but later changed his mind, and it was contended that he was barred. The court said: "The appellant's position that the relator cannot successfully urge his claim to the office, for the reason that he created an estoppel against himself by requesting the election officers not to determine the result of the election, cannot be defended. The duties of the election officers were prescribed by a public law, and all the interested parties had equal knowledge, so that no estoppel could possibly arise. But, more than this, the public had an interest in having the election officers perform the duty enjoined upon them by law, and it was not for the relator to relieve them of this duty, and this they were bound to know."

And this brings us appropriately to the main contention made by the respondent clerk, namely, his contention that the matter involved in this petition for a mandamus is not one "affecting the public interest" as must be under Section 2357, Code 1930, in order to be heard and determined in vacation. It is respondent's contention that the right of examination given by the statute above quoted is a private right only and is one which concerns

none other than the candidate seeking to exercise it. In this we are of the opinion that respondent is very much mistaken.

When the convention system for the nomination of candidates was abandoned in favor of the primary election in the hopeful expectation that the primary would result in a better expression of the will of the majority of all qualified electors, it was sorrowfully found after long years of disappointing experience that in many counties such a measure of corruption and fraud and divers illegalties on the part of executive committees and their precinct managers had crept into the making of the nominations that in fact the primary system had become no better than, if as good as, the old-time .convention. The legislature finally determined to enact an additional and supplemental primary election law which so far as practicable would stop up the gaps by which those wrongs upon the electorate and incidentally upon candidates were being perpetrated, and Chap. 19, Laws 1935, Ex. Sess., was enacted.

This chapter is filled with what may be briefly termed gap-stopping devices, and among these, and what may be properly regarded as the chief device among them all, was this provision for the allowance of an examination of the boxes by any candidate within twelve days after any primary election. In erecting this device thought was taken of one of the most familiar lessons in human experience, namely, that when in any governmental procedure or other business, there is a device or set-up by which any wrong or fraud or thievery is reasonably certain to be detected, this of itself will furnish the most efficient assurance that no such wrongs or fraud or thievery will be likely to occur. In these precinct boxes all the papers, documents, ballots, etc., which will show forth how the election was conducted and the integrity of the votes and the count thereof is required to be enclosed and immediately turned over to the circuit clerk, who shall seal the same. Any careful examination of the contents of

these sealed boxes, especially when the examination is made with the intensity of inquiry which a candidate would naturally devote thereto, will reveal frauds and irregularities if any were committed. Election managers, knowing that the right exists to examine the boxes and their contents, and this on the part of candidates, will thus have before their eyes the most potent persuasion that perhaps could be devised against the perpetration of wrong, and it has so proved by experience in nearly every county in the state, now for a period of eight or nine years. But take away this right of examination and there would soon be a return to former unfortunate experiences.

This right of examination is, therefore, not one given solely in the personal interest of a candidate, although he may have an incidental interest therein. It is a right by which in its main objective the candidate is made a mere instrumentality in the better assurance of an honest, impartial and lawful election which will truly ascertain the will of the qualified electorate in the choice of those who will act and speak for the people in the transaction of the public business, and hence the right is one affecting the public interest in the highest and fullest sense of that term. The district attorney was right in his duty to file and prosecute this petition; the circuit judge was right in his duty of promptly hearing it in vacation and right in sustaining it and in ordering the writ against this delinquent clerk.

Unfortunately, however, the trial judge allowed an appeal with supersedeas, which had the practical effect of denying the writ so far as affording any relief before the day of the general election,—defeating thereby one of the objects of the quoted statute. He must have been under the impression that such an appeal was one of right, else surely he would never have granted it. But appeals to this court with supersedeas in civil cases are matters of right only under Sections 29, 31, and 33, Code 1930, and this only in three classes of cases: (1) Where there is a money decree or judgment, or (2) where there is a

decree or judgment for the recovery or against the retention of specific property, or (3) where the decree directs the sale or delivery of possession of real estate, in which cases a supersedeas is allowed as a matter of right when an approved supersedeas bond in double the amount or value is given,—provided, of course, the decree or judgment is final in its nature or effect.

Appeals to this court with supersedeas from final decrees or judgment in all civil cases other than the three above mentioned are governed by Section 35, Code 1930, and under that section whether a supersedeas shall be allowed is within the sound discretion of the court. Moreover, Section 2354, Code 1930, expressly provides that appeals in mandamus may be with supersedeas, but not that they shall be.

It was an abuse of discretion to allow a supersedeas in this case, as was done. As stated in 4 C. J. S., Appeal and Error, Sec. 636, pp. 1125, 1126, the rule is that "a supersedeas or stay will not be granted by either the lower or the appellate court unless it appears to be necessary to prevent irreparable injury or miscarriage of justice, and that substantial questions will be presented on appeal. Nor will it be granted where it appears that the appeal . . . is merely for the purpose of delay, is frivolous, and without merit; where the supersedeas or stay may defeat the ends of justice or result in irreparable or disproportionate injury to appellee; where it would permit such a change of status of the subject matter as to render further proceedings ineffectual, or destroy the subject matter of the litigation and leave nothing but an abstract question to be passed upon by the appellate court; where the damage which may result from the supersedeas or stay is of such a character that it cannot be compensated in money, so that appellee will not be protected by the bond in case of affirmance," etc.

It is enough to say that this appeal is utterly without merit, and that it was evidently for delay; but beyond

this, the impropriety of the supersedeas falls within about every one of the other reasons stated in the foregoing paragraph for its disallowance. Let us suppose that this clerk, when the executive committee met to canvass the returns, had declined to deliver any of the boxes to the committee and upon a petition for mandamus by the Attorney General or district attorney the recalcitrant clerk had contended as here (1) that the public interest was not affected, and (2) on being overruled on this, he had demanded an appeal with supersedeas, thereby preventing any nominations for the general election. He would have had no better grounds for either of such contentions than he has in the present case. Two or three other contentions have been made by the respondent, but these are so manifestly without merit that we do not particularize them.

Inasmuch as the day for the general election has passed, and had passed when the record in this case was filed in this court, we have raised the question, ex mero motu, whether the cause has become moot, a question which neither of the parties has suggested. In the first place, we do not know what an examination of the three boxes will disclose. It may be that the contents will show that the relator was in fact entitled to the nomination, and what rights this would give him, if any, we ought not to decide without a record of what the full facts are,— unless we are prepared to say that manifestly and in any possible event relator has no further rights in the premises. There being no brief on that question, we decline to enter upon it; but rather for the reasons next to be stated, we lay aside that phase of the matter.

While it is well established in this state, as well as elsewhere, that as a general rule an appeal will be dismissed when no useful purpose could be accomplished by entertaining it, when so far as concerns any practical ends to be served the decision upon the legal questions involved would be merely academic, it has, on the other hand, been broadly stated that the rule will not be ap-

plied when the question or questions involved are matters affecting the public interest. 3 Am. Jur., p. 310. That statement is made more accurate, however, by the further statement that there is an exception to the general rule as respects moot cases, when the question concerns a matter of such a nature that it would be distinctly detrimental to the public interest that there should be a failure by the dismissal to declare and enforce a rule for future conduct. See, text and authorities 4 C. J. S., Appeal and Error, Sec. 1854, pp. 1945-1947, note 24, and 38 C. J., p. 949, note 66. The exception is of a compelling propriety in the present instance, for if we were to dismiss this appeal without disposing of the legal questions here involved and without declaring the rule of law which must be observed, and doing nothing for its enforcement, the way would thereby be made plain to corrupt politics by which to work a practical repeal of our Corrupt Practices Act, and by which the evils which existed before its passage could be revived, and that way would be simply to follow the course taken in the facts disclosed by the present record.

The judgment of the trial court ordered the respondent clerk to permit the examination at any time up to and including September 15, 1943. That date having passed, we affirm the judgment with the modification that the examination shall be allowed upon the statutory notice at any time within twelve days from and after the filing of the mandate of this court in the court below.

Affirmed as modified.

DISSENTING OPINION.

Smith, C. J., delivered a dissenting opinion.

The appellant had the right to appeal from the judgment below under Section 13 of the Code of 1930, and whether the judge of that court erred in permitting the appeal to operate as a supersedeas under Section 35 of

of the Code, is before us, no motion-having been made by the appellee to dissolve the supersedeas.

This mandamus was sought by the appellee Smith as an aid to his primary election contest which was then pending and in which the court below denied him any relief. On appeal to this court that judgment was reversed, the court holding that Smith's opponent had not been legally nominated as his party's candidate for the office sought by him and Smith. Smith v. Deere, 195 Miss. 502, 16 So. (2d) 33, decided on December 20th, 1943. In the meantime the general election had been held and Smith's opponent had been elected to the office for which they both sought their party's nomination in the primary election. The effect of our judgment was to vacate that election and devolve upon the Governor the duty of calling a special election to fill the office. Paragraph (f), Section 15, Chapter 19, Laws Extra Sess. 1935. This the Governor has done, setting Tuesday, January 25th, 1944 (tomorrow) therefor. The holding of this election cannot, in my opinion, be affected by any judgment we can now here render; therefore, the writ of mandamus sought by Smith would avail him nothing, consequently the case has become moot and the appeal should be dismissed. This court in numerous cases has so held, among which are: McDaniel v. Hurt, 88 Miss. 769, 92 Miss. 197, 41 So. 381; Pafhausen v. State, 94 Miss. 103, 47 So. 897; Lockard v. Hoye, 113 Miss. 238, 74 So. 137; Whidden v. Broadus, 108 Miss. 664, 67 So. 155; Yates v. Beasley, 133 Miss. 301, 97 So. 676; Sellier v. Board of Election Commissioners, 174 Miss. 360, 164 So. 767.

True it is that the dismissal of the appeal would leave the judgment of the court below unaffected by the appeal, but that fact, if it could become material in any case where the plaintiff's cause of action has become moot, is of no force here, for the command to the appellant in the judgment below is to permit the appellee Smith to inspect the contents of the primary election ballot boxes on the 15th day of September, 1943, which date has long

since passed. The clear implication of the decision just rendered is that the appellee Smith may continue his contest of the election of his opponent, and is, therefore, a good illustration of the difficulties, uncertainties and delays that lurk in conferring on the courts the right to review and control nominations by political parties of its candidates for public office.