HUMBLE OIL & REFINING Co. et al v. STATE et al

In Banc. June 13, 1949.

(41 So. (2d) 26)

848

Laub, Adams & Forman, Heidelberg & Roberts, and Tom P. Caldwell, for appellant. ,

L. A. Whittington, W. A. Geisenberger, Walter D. Coleman, Robert L. Netterville, and J. T. Patterson, Assistant Attorney General, for appellees.

Smith, J.

The State of Mississippi and the Board of Supervisors of Adams County filed their original bill in the Chancery Court against Humble Oil and Refining Company, seeking the cancellation of an oil and gas lease to said corporation, dated October 20, 1947. The County Superintendent of Adams County was also made a defendant, but was by the chancellor afterwards permitted to become a complainant, which she did.

The validity of the lease was attacked on several grounds. Two of which only we will mention.

The chancellor sustained appellees in their contention that the lease was void because the minutes of the Board of Supervisors, October 1947 meeting, were not signed before the final adjournment; and overruled a contrary contention of appellants, as well as their additional argument that the lease could be and was ratified at the Board's subsequent meeting on November 3rd, 1947. Appellees, over objection of appellants, were permitted to introduce evidence by the president and others that he was on a trip to the state of New Jersey at the time. We do not refer to this matter for the purpose of adjudicating this difficult issue, but merely and solely as a part of the history of the trial.

We have unanimously concluded that the lease is void because on October 20, 1947, the Board of Supervisors had no legal power to execute it and the County Superin-

tendent of Education had no lawfull right to approve it, under their sole authority, Section 6600, Code of 1942.

The Board of Supervisors of Adams County were Trustees of the lands involved for the benefit of the educable children of the township in which it lay, since Section 3, Township 6 North, Range 4, West, was lieu land, in place of Section 16 of the Choctaw Purchase. ██ ██ As such Trustees they were required, like all other fiduciaries, to exercise a higher degree of care with reference to the administration of their trust than in the management of their own individual personal business, and furthermore, even than in attending to the general run of the county's business. After authorizing and executing this lease, they determined that it was improvidently done, without legal authority, and filed this suit to cancel it, offering to return the payment of $5,031.00, appellant had paid for it. This tender, during the trial, and in the original bill, was refused by appellants.

On April 7, 1942, an oil and gas lease was legally executed to Humble Oil and Refining Company as to this same land. Its term was for six years, the maximum allowed by the statute. This, of course, fixed the expiration date of that lease on April 7, 1948, approximately five and a half months after the execution of the new lease on October 20, 1947, and a few days more than three months after the term of office of the members of the board of supervisors and of the county superintendent of education expired, which was December 31, 1947.

Section 6600, supra, requires that the county superintendent of education approve the lease before execution by the of supervisors.

Argument is made by appellees that on October 20, 1947, the board by executing a new lease to go into effect on April 7, 1948, for two years thereafter, thereby declared their right to renew a lease before it expired, cutting off all benefits from the possible enhancement of its value, in this growing and expanding field, by the time its effective date was reached, and by successive

repetitions of the process, continue such leases for long years, without drilling by the lessee, contrary to the statutory limitations of six years. Here, Humble already had a valid outstanding lease to the oil and gas under the same land, and it is argued that under those circumstances at the date of October 20, 1947, even conceding the right of the board to make said lease on said date, they, as Trustees for the educable children, cut themselves off from competive bids by other oil companies, who would be unwilling to make such a contract then, for the reason Humble, under its existing lease, could defeat any other lease to another, by the simple expedient of drilling under their lease dated April 7, 1942. Indeed, on October 20, 1947, the board had nothing to lease, because they were then already lessors of all they had a right to lease, under proper conditions and as authorized by law.

The October 20, 1947, anticipatory lease coupled with the right of Humble also under its existing lease, to drill on said lands, made it extremely unlikely that any other oil companies would be willing to risk the expense of geophysical exploration, due to uncertainty as to the availability of the oil and gas for a new lease April 7, 1948. By awaiting the end of the term, the matter would then be open to general competition.

All of the foregoing is but preliminary to our final conclusion that the law is wise in limiting such leases to six-year terms, and that ██ ██ neither the board of supervisors nor the county superintendent may lawfully make a contract binding their successors, which begins after the terms of office of the board making it has expired. Our view here is not to be confused with contracts effective during term of one board, and performance starting during the term of office of said board, but extending over into the term of office of a successor board. Here the terms of office of the members of the board and of the county superintendent of education expired December 31, 1947, yet they attempted to make a contract to go into effect during the term of their successors, preempting

the latter from the right and duty to attend to the matter themselves.

We have no cases, decided by this Court, exactly in point on the question. The nearest approach to it is American Oil Co. v. Marion County, 187 Miss. 148, 192 So. 296. That was a case dealing with the power to sell or lease county property. The third syllabus reads: "3. A county board of supervisors may not by contract preclude itself or its successors in office from the right and duty to exercise the power given it by a statute, whenever, in its judgment or discretion, it is deemed necessary to exercise a clearly granted power." We quote from the opinion: "In this connection, we might say that the power to sell is here so clearly distinguished from the power to lease as not to call for debate; but there is a manifest reason therefor, for if a predecessor board could lease county land, it would prevent its successors from exercising the power to sell and convey, the very thing which the Legislature has granted—the power to sell lands of the county which have ceased to be used or useful for public purposes. As illustrative of this position, see the case of State ex rel. Scott v. Hart et al., 144 Ind. 107, 43 N. E. 7, 33 L. R. A. 118. A board of supervisors may not, by contract, preclude itself or its successors in office from the right and the duty to exercise the power given it by a statute, whenever, in its judgment or discretion, it is deemed necessary to exercise a clearly granted power."

The Supreme Court of Indiana has held that a county auditor has no authority, after his successor is elected, and shortly before the close of his term, to contract for a suitable number of blank forms of poll books and election returns, and other proper blanks necessary to be used in an election to be held more than 18 months after the contract is made. Morrison et al. v. Board of Commissioners of Decatur County, 16 Ind. App. 317, 44 N. E. 65, 1012. Eliminating, "after his successor is elected," we agree with this announcement by the Indiana Court. The point is, the board of supervisors and county

superintendent of education could not bind their successors after their term of office had expired, by a contract to take effect only and be operative during the term of office of their successors.

But, say appellants, four supervisors and the county superintendent were reelected,—which, in our judgment, is no answer. We are dealing with officers, not identity of individuals.

As stated, supra, there is no Mississippi case dealing with counties directly in point, but the question has been decided by this Court in a municipal case where we held that the outgoing Board of Mayor and Aldermen could not elect inferior municipal officers to begin service after the term of office of the Board of Mayor and Aldermen, because that power belonged exclusively to the new or incoming Mayor and Board of Aldermen. That is directly in point here. Ott v. State, 78 Miss. 487, 29 So. 520.

American Jurisprudence says this: ''Thus, a contract by which a board of county commissioners attempts to employ a legal adviser for a period of three years, to commence three months in the future and after the time for the election of a person to fill the vacancy caused by the expiration of the term of office of one member of the board, the term of employment extending over a period during which all the members of the board as constituted at the time of the contract will retire therefrom unless reelected, is against public policy and void. Moreover, an insurance contract by a county board has been held binding on a successor board only if the term of the contract was to commence before the expiration of the term of the board which made it.''

We affirm the chancellor's decree in favor of appellees on the ground discussed by us, supra, which, however, overrules his views contrary thereto. We make no adjudication on the signing of the minutes, deeming it to be unnecessary, in view of the conclusion we have reached

on the other point. Several other matters are argued, which we likewise do not review, for the same reason.

The decree will accordingly be affirmed.

Affirmed.