WILLIAMS *v.* STATE, ex rel.

In Banc. May 22, 1950.

No. 37521 (46 So. (2d) 591)

Williams & Williams, for appellant.

Morse & Morse, for appellee.

### McGehee, C. J.

This is an appeal with supersedeas from an order of the circuit court which directed the issuance of a writ of mandamus, whereby W. L. Moseley, Mayor of the City of Picayune, was commanded to sign, execute, and deliver a warrant for the sum of $9,368.70, in response to a requisition from the trustees of the Picayune Municipal Separate School District in favor of Dye and Mullins, Inc., building contractors, and which warrant was drawn on the maintenance fund for the operation and maintenance of the school for the scholastic year of 1948-49, instead of on the bond and building fund. The city clerk had prepared and signed the warrant pursuant to the requisition therefor by the superintendent of the school district at the instance of the trustees thereof, and had submitted the same to the mayor for his signature.

At the hearing on the petition for the writ of mandamus, the principal contention made by the defendant Moseley was that the school trustees were without authority to use the maintenance fund except for the purpose of maintaining and operating the school during the scholastic term, and he frankly stated as a witness that he would have signed the warrant if it had been drawn on the bond and building fund and that he was then willing to do so. But it appears that the trial court was of the opinion that he had no discretion as to whether or not the school trustees should be permitted to pay an installment on a building contract out of the maintenance fund, which was composed largely of the state per capita fund, plus the state equalization fund, the state vocational fund, and a local 20-mill ad valorem tax levy made by the mayor and board of aldermen against the taxable property in this separate school district, and that he should have therefore signed the warrant which was drawn on this fund to pay the seventh installment to the building contractors on the cost of the construction of a gymnasium and vocational building.

On the rendition of judgment which directed him to sign, execute, and deliver the warrant to the said contractors, an appeal was promptly executed by the Mayor under Section 1210, Code of 1942, which provides that in any suit or action, any officer who is a party to any suit or action in his official character, in which a city is beneficially interested, shall be entitled to appeal, and that "an appeal may be taken, without giving an appeal-bond; and in such case, if an appeal-bond would operate as a supersedeas in favor of a private person, the appeal, without bond, shall have the same effect in the cases herein provided for; and this provision shall apply to all the courts of the state."

Section 1212, Code of 1942, provides that: "In all suits now pending or hereafter brought, against . . . or the mayor and board of aldermen of any city . . ., or other officer of any . . . municipality . . ., in their official capacity, any taxpayer or taxpayers of the . . . municipality . . ., shall have the right at his or their own expense . . . to defend all suits instituted . . . and may prosecute an appeal to the Supreme Court of the state from any judgment or decree of a circuit or chancery court adverse to such officer or officers, if such officer or officers do not prosecute an appeal within thirty days from date same is rendered." The statute further provides that where an appeal is prosecuted by such an officer who is a party to the suit and he desires to dismiss such appeal, ",the appeal shall not be dismissed if any taxpayer or taxpayers of the . . . municipality . . . shall object thereto, but the court shall retain the cause and render decision therein upon the issues presented by such appeal, provided, however, that such taxpayer or taxpayers shall enter into bond for costs as hereafter provided, and shall be liable for all costs of such appeal should said cause be decided adverse to him or them."

In the instant case a taxpayer, G. H. Williams, entered into a bond for costs provided for in Section 1212,

supra, and also pursuant to the provisions of Section 1213 of the said Code. We are therefore of the opinion that the action taken first by the Mayor, effecting the appeal, and by the taxpayer in prosecuting the same here upon the failure of the defendant named in the mandamus petition to do so was effectual to constitute an appeal with supersedeas, and especially where no appeal with supersedeas was denied by the trial court, assuming, but not deciding, that it was discretionary with the court as to whether or not such an appeal should be allowed.

Except for matters *de hors* the record, and found in the briefs of counsel alone, the failure of the defendant Mayor to prosecute the appeal here is not explained, nor has any motion or pleading been filed with the clerk of this Court, with proper notice to the appellant to answer the same, asking for a dismissal of such appeal, even if the said officer or the appellee would be entitled to have the same dismissed.

We shall therefore deal with the appeal as one with supersedeas, and as a pending cause for decision, and particularly for the reason that the issue involved is one of great public interest, even though the Mayor may have resigned, as stated in the briefs of counsel, though not shown by the record or by any motion or plea filed with the clerk of this Court, shortly after the judgment was rendered. Compare Sartin, Circuit Clerk v. Barlow, Dist. Atty. ex rel. Smith, 196 Miss. 159, 16 So. (2d) 372.

Prior to July 15, 1948, the City of Picayune had issued bonds in the sum of $175,000.00 to erect a high school building. On the date aforesaid this building had been completed and there remained a balance in the bond and building fund of $103,021.05, and the school trustees had received in addition thereto the sum of $18,000.00 for the said building fund, from the State Building Commission, and donations from L. O. Crosby, Jr., in the sum of $10,-500.00 and from R. H. Crosby, a donation of certain bonds which were cashed in the sum of $26,228.80 principal and accrued interest, and all of which amounts were in the

city depository to the credit of the bond and building fund in the total sum of $157,749.85.

Thereupon the trustees of the said Picayune Municipal Separate School District advertised for bids for the construction of a gymnasium and vocational building, and the contract therefor was awarded to Dye and Mullins, Inc., building contractors, for the sum of $93,301.00. This was done without taking the matter up with the mayor and board of aldermen and without a petition or election, but we are not concerned here as to the validity of the said building contract since the consideration of that question is unnecessary to the decision of the issue here involved.

On the said 15th day of July, 1948, the school trustees, pursuant to Section 6541, Code of 1942, prepared and filed with the state superintendent of education a budget of expenditures for the support, maintenance, and operation of the public schools of such separate school district during the fiscal year beginning on the first day of July. That statute provides that such budget shall contain a detailed statement of the estimated amounts to be expended for teachers' salaries, transportation, if any, and other expenses to be incurred in the operation of the separate school, or schools, during the fiscal year, showing the number of months for which funds will be available for the operation and maintenance of the school, or schools, during the school session, and the estimated cost of operation for each month.

Section 6542, Code of 1942, requires that the said board of trustees shall at the same time prepare and file a detailed statement of the revenues which will be available for the support and maintenance of the school, or schools, during the fiscal year; that such statement shall show in separate items the amounts to be received from the state common school fund, and the state equalizing school fund, if any, and the estimated amounts to be received from the separate school district tax levy, or levies, or any other sources which may be available for the support and

maintenance of the separate school district school, or schools, during the fiscal year, and also the balance of money on hand to the credit of the separate school district on the first day of July, and the total amount of funds which will be available for the support and maintenance of the separate school district school, or schools, during the fiscal year.

Section 6543, Code of 1942, provides that the ''State Superintendent of Education shall carefully examine . . . the separate school district budgets filed . . . *for the purpose of determining whether or not the revenues to be made available during the fiscal year will be sufficient to meet the expenditures provided for in such budgets.* (Italics ours.) If the State Superintendent of Education shall find that the budget of expenditures will not exceed the amount of revenues to be made available for the support and maintenance of the public schools during the fiscal year, he shall approve the same in writing, and shall certify his approval of such budget . . . to the board of trustees of such separate school district . . .'' This statute further provides that if the State Superintendent of Education should be of the opinion that the revenues to be made available for the support and maintenance of the schools of the separate school district will be insufficient to meet the expenditures provided for in the budget, he shall return such budget to the board of trustees for revision and shall require the board to revise such budget by reducing the estimated expenditures in such amount as may be necessary to balance the expenditures against the estimated receipts.

Section 6544, Code of 1942, provides that the board of trustees of each municipal separate school district shall file a certified copy of the budget with the mayor and board of aldermen, and that the same shall be entered upon the minutes thereof.

Section 6545 provides that it shall be the duty of the board of trustees of each municipal separate school district to limit the expenditures of school funds during the

fiscal year to the amount set forth in their respective school budgets.

The budget prepared by the board of trustees and filed with the State Superintendent of Education on July 15, 1948, for the scholastic year of 1948-49 was duly approved by the State Superintendent of Education, and was certified to and approved by the mayor and board of aldermen. Thereafter, on May 17, 1949, when the school term was nearing the end, the school trustees sought and obtained the permission of the State Superintendent of Education to revise their budget for the year beginning July 1, 1948, so as to include therein the $103,021.05, from the bond and building fund, the donation from L. O. Crosby, Jr., of $10,500.00, the donation from R. H. Crosby of $26,000.00 (the principal amount of his donated bonds), and the sum of $18,000.00, received from the State Building Commission. This request was granted by the State Superintendent of Education, but was never approved by the mayor and board of aldermen, nor were these elected officers requested to approve the same, nor did it contain any reference to expenditures therefrom for paying the cost of the construction of the gymnasium or vocational training building.

We find no authority in the statutes last above mentioned, or elsewhere, for such action of the school trustees with the approval of the State Superintendent of Education.

Section 6564, Code of 1942, provides that the state equalizing fund, which was included in the budget as a part of the maintenance fund is to be used for the extension of the common free schools beyond the 4-months term as required by the Constitution, and that no part of the state equalizing school fund shall be used except as specifically authorized by law; and we are of the opinion that the 20-mill ad valorem tax levy made by the mayor and board of aldermen against the ad valorem taxpayers of this municipal separate school district, amounting to $94,000.00, the state per capita fund, the

funds derived from tuition, poll taxes, and from the state vocational fund to carry on vocational training, and the equalizing fund, all constituted trust funds for the operation and maintenance of the school for the fiscal year involved, and that the board of trustees was without authority to expend any part thereof for the construction of buildings, except as authorized by Section 6528, Code of 1942, which statute is not applicable here. Under Section 6444, Code of 1942, the funds placed in the building fund shall in no event be used for maintenance purposes except as later provided for in Chapter 200, Laws of 1946, which is likewise inapplicable to the facts in the instant case.

Moreover, Section 9714, Code of 1942, precludes the taxing authorities in a municipal separate school district from levying this ad valorem tax on exempt homesteads therein for school maintenance, except to the extent of their value in excess of $5,000.00; and this is another reason why the maintenance fund should not be diverted to building purposes so as to unduly increase the tax burden on other property for the operation and maintenance of the schools.

At the time the warrant in question was drawn and presented to the Mayor for his signature, there remained in the bond and building fund the sum of $35,600.69, and it is therefore undisputed that there was available at that time more than a sufficient amount in the bond and building fund out of which to pay the said warrant. In fact, six progress payments on the basis of 85% of the value of the work done under the contract for the construction of the gymnasium and vocational building had already been paid out of the bond and building fund, and no valid reason is assigned by the appellee as to why the warrant in question should not have been paid out of such fund.

But it seems to be the position of the appellee that the entire control of the bond and building fund, as well as of the maintenance fund, is left by law to the discretion of the school trustees and that the Mayor

was under a ministerial duty to sign any warrant called for by a requisition of the school trustees. The Court is unable to agree with this contention, since the mayor and board of aldermen fix the amount of the annual levy of ad valorem taxes on the basis of what is needed for the operation and maintenance of the school, after the state per capita fund, equalization fund, state vocational fund, tuition and poll taxes are taken into account for that purpose. These elected officers are under a duty to the taxpayers to assume some responsibility in the matter of whether or not these trust funds are to be diverted to a purpose other than such as is authorized by law.

As we understand the record, the payment of this warrant of $9,368.70 out of the school maintenance fund would have reduced the same to the sum of $7,576.59 from the amount of more than $100,000.00 called for by the budget submitted on July 15, 1948, whereas there was $35,600.69 available in the bond and building fund for the payment of the said warrant.

Section 3624, Code of 1942, provides that the Mayor shall sign all warrants drawn on the city treasury for money, and the only exception to this statute is contained in Section 6287, Code of 1942, which permits the clerk of a municipality, if a separate school district, to issue a warrant in payment for the services of a teacher, stating the number of the month of the term during which the services were rendered. This authority was evidently granted to the city clerk upon the theory that since the monthly salary of each teacher is supposed to be fixed by contract the issuance of the warrant therefor would not involve the exercise of any particular judgment or discretion. But we think that the requirement that the Mayor should sign all other warrants on the city treasury was intended as a checkrein on the expenditure of funds for any municipal purpose, and to the end that the taxpayer should have the benefit of his judgment and discretion in determining whether or not the warrant is

268

drawn on the proper fund and for a purpose authorized by law.

We are therefore of the opinion that it was error to have directed the issuance of the writ of mandamus, and that therefore the cause should be reversed and the petition for the writ of mandamus should be dismissed.

Reversed and judgment here for the appellant.