DICKINSON, Presiding Justice,
dissenting:
¶ 16. I respectfully dissent for three reasons: First, the majority ignores the mootness exception for cases involving wrongs capable of repetition yet evading review.[1] Second, the majority ignores the mootness exception for cases involving the public interest.[2] Third, the majority ignores the fact that the Failses, who lost in the trial court, were ordered to pay costs there, and they have now been ordered to pay costs here. They would have paid no *1227 costs, had they prevailed here — and, in my view, they most certainly would have.

1. This case involves a wrong capable of repetition, but evading review.

The Mootness Doctrine in Federal Court

¶ 17. Under the United States Constitution, federal courts may decide only actual cases and controversies.[3] If, during an appeal, the actual controversy between the parties ends, the court should dismiss the case as moot.[4] But there are exceptions to this general rule. One exception is cases involving a wrong that is “capable of repetition yet evading review.”[5] In order for this exception to apply, two elements must be met. First, the wrong must be an injury reasonably likely to happen to the complaining party again.[6] Second, “the challenged action [must be] in its duration too short to be fully litigated prior to its cessation or expiration.”[7]
¶ 18. Notably, the first element requires — in federal courts — that the injury must be reasonably likely to happen to the actual complaining plaintiff again. In some cases, that is not possible — such as when a high-school student alleging school officials violated her constitutional or statutory rights graduates before a decision on the merits. The student will never be in high school again; therefore, it is impossible that the alleged injury will happen to her again. Therefore, her claim becomes moot, and the “capable of repetition” exception does not apply. So how can a high-school student bring a claim against school officials in federal court without that claim becoming moot after graduation? In federal court, the answer is simple: certify a class action under Federal Rule of Civil Procedure 23.[8]
¶ 19. For example, in Board of School Commissioners of the City of Indianapolis v. Jacobs,[9] six Indianapolis high-school students brought First and Fourteenth Amendment claims against a board of school commissioners for actions the board took against the school newspaper. But, by the time the suit reached the Supreme Court of the United States, all six students had graduated. Because the students had graduated, the case was moot: the injury alleged is not reasonably likely to happen to the complaining parties again. The Supreme Court of the United States noted that if the students had brought a class action on behalf of all students currently affected, the claim would have been justiciable.

The Mootness Doctrine Under Mississippi Law

¶ 20. But in Mississippi, there are no class actions. So, in order to ensure rights are vindicated in cases like Jacobs — or the case here — this Court has recognized that the “capable of repetition, yet evading review exception” is broader than in federal courts.[10] Indeed, the mootness doctrine *1228 itself is more relaxed in Mississippi, because our State Constitution lacks a cases- and-controversies requirement.[11] Additionally, Mississippi — as well as forty-two other States[12] — recognizes another mootness exception not available in federal court: that the Court may hear otherwise moot cases if deciding the issue is in the public interest.[13] Two Mississippi school cases illustrate these exceptions.
The Board of Trustees of the Pascagoula Municipal Separate School District v. Doe[14]
¶ 21. In Board of Trustees v. Doe, school officials attempted to expel a tenth-grade student, John Doe, for having marijuana on campus.[15] Doe’s expulsion was to last for the remainder of the 1988-1984 school year.[16] Doe was learning-disabled and therefore subject to the Education for All Handicapped Children Act (EHA) passed by Congress and later adopted in Mississippi.[17] Under the Act, Doe’s parents were entitled to appeal the school’s decision to an impartial, due-process hearing committee, which they did.[18] At the hearing, the hearing officer determined that expulsion was permitted only where “the child’s behavior represents an immediate physical danger to him/herself and others or constitutes a clear emergency within the school such that removal is essential.” [19] Because Doe was not a threat to the students, the officer concluded that expulsion was not warranted.[20] Regardless, the officer held that the issue was moot because Doe already had completed the 1988-1984 school year.[21]
¶ 22. The school board eventually appealed the case to this Court, and Doe filed a motion to dismiss the appeal as moot.[22] Not only had Doe completed the year when he was supposed to have been expelled, but he had successfully graduated from high school.[23] Despite the fact that the alleged wrong could never happen to this student again, this Court held that the wrong was capable of repetition, yet evading review, and decided the issue.[24] Seven years later, Chief Justice Prather relied on this precedent in another school case.
Mississippi High School Activities As *1229 sociation, Inc. v. Coleman[25]
¶ 23. In Coleman, Kiese Laymon and his mother moved from Maryland to Brandon, Mississippi.[26] Despite the fact that Laymon resided in Brandon, Laymon enrolled in St. Joseph High School, a parochial school located in the Jackson Municipal Separate School District (which was not the district of Laymon’s residence).[27] Laymon began practicing with the St. Joseph basketball team, but the school told him that he was ineligible to play during the 1990-1991 school year because of the Mississippi High School Athletic Association’s Anti-Recruiting Rule. Under that rule, school athletes are eligible to play only for schools located in the “district in which his parents/guardian are bona fide residents.”[28] Laymon sued the Athletic Association, claiming that the rule did not apply to parochial schools.[29] The chancery court issued a temporary restraining order (TRO), ordering the Association to let Lay-mon play.[30] Eventually, the chancellor issued a preliminary injunction and a permanent injunction allowing Laymon to play.[31] The Association appealed.[32]
¶ 24. Writing for the Court, Chief Justice Prather acknowledged that the issue, while moot, still was justiciable because it was capable of repetition, yet evading review.[33] First, Justice Prather noted that mootness exceptions are broader in Mississippi:
Mississippi’s expansion of the exception to the mootness doctrine works to fill the gap left by the unavailability of class actions in Mississippi. Federal Courts need not employ such an expanded exception to the mootness doctrine because class actions are available to insure that moot cases which are capable of repetition yet evading review are adjudicated as live controversies.[34]
Second, Justice Prather stated that — unlike federal courts — the capable-of-repetition exception applied, despite the fact that the same party would not be subject to the same wrong again.[35] Just as in Coleman, the issue was moot as to Laymon — the complaining party — specifically: the basketball season was over, and despite the eligibility rule, he had won an injunction and had played that very season.[36] Regardless, the Court found the issue justiciable.
¶ 25. In Coleman, Chief Justice Prather set forth the current requirements for the capable-of-repetition exception to, apply: “(1) the duration of the challenged action must have been short; and (2) the time required to complete an appeal is lengthy.”[37] I find that those requirements are met here. The school board passed the resolution purporting to revoke all existing transfers in August 2007. It is now May 2012 — five full school years have passed. Any affected student from eighth to twelfth grade would have graduated in *1230 the time it took this Court to render a decision — and the issue, if brought by one of those students, would be moot, according to the majority. It is possible a seventh-grade student could challenge the board action, and — if successful — return to his or her district of choice for at least part of the final year of school. But, because of the length of delay for many other students, I find the issue in this case is capable of repetition, yet evading review.
¶ 26. The majority correctly points out that Courtney’s parents bought a home and moved to the school district of her choice, so she also was never forced to return to the transferor school. But the exception still applies.
¶ 27. In Coleman and Doe, the students challenged a regulation or action that was never actually applied to them — as here. In Coleman, Laymon still played basketball during the season at issue. In Doe, the student never was actually expelled. And here, Courtney never was forced to return to the transferor district. The real issue is whether the challenged action is likely to happen to others again, and whether the length of litigation will moot the issue as to them.

2. This case involves a wrong that involves the public interest.

¶ 28. In addition to cases capable of repetition, yet evading review, this Court also will hear moot cases “when the question or questions involved are matters affecting the public interest.”[38] In Sartin v. Barlow, a candidate for the Board of Supervisors of Walthall County challenged certain votes in a primary election, claiming that some voters had not been residents of the State for two years.[39] Consistent with State law, the candidate demanded examination of the ballots in the presence of the circuit clerk.[40] But the clerk refused, and a district attorney filed — and a circuit judge granted — a petition for writ of mandamus ordering the clerk to examine the ballots.[41] The trial judge erroneously allowed the opponent to file a supersedeas appeal, which stayed the writ.[42] And while on appeal, the date of the general election passed; the issue became moot.[43]
¶ 29. First, the Court adopted the public-interest exception to the mootness doctrine:
[Tjhere is an exception to the general rule as respects moot cases, when the question concerns a matter of such a nature that it would be distinctly detrimental to the public interest that there should be a failure by the dismissal to declare and enforce a rule for future conduct.[44]
¶ 30. Because a decision was necessary to ensure election law was properly enforced, the Court determined that solving the present issue was sufficiently in the public interest to warrant a decision.[45] So, this Court heard the issue and issued the mandamus ordering the clerk to examine the ballots within twelve days from and after the filing of the mandate — despite the fact that the general election was over, and the reexamination would not affect the outcome of that election.[46]
*1231 ¶31. Relying on Sartin, this Court again held that ballots may be contested despite the passing of the general election on appeal: the “complained of action will certainly recur, however, the appellant Misso will probably not be subject to the same action.”[47]
¶ 82. Election matters involving potential corruption are not the only cases involving the public interest. In Strong v. Bostick, this Court held that whether or not the Mississippi Commission on Wildlife Conservation could ban the use of dogs while deer hunting was a matter of “great public interest” preventing dismissal of a moot case.[48]
¶ 33. In Strong, the Commission adopted a regulation prohibiting the use of dogs while deer hunting during the 1981-1982 deer season.[49] Bostick sued, and the circuit court voided the regulation because the Commission had failed to make sufficient findings of fact.[50] The Department appealed, and because the deer season at issue ended, Bostick (the original challenger of the regulation) argued the case was moot and filed a motion to dismiss.[51]
¶ 34. This Court responded that, although “an appeal will not be entertained where no actual controversy is involved and a reversal would do no good.... Such argument finds no sympathy here.”[52] The Court unanimously held that the issue was “of great public interest” and that “the public [was] entitled to know whether or not the Department and Commission have the authority to promulgate and enforce regulations such as the one now before the Court....”[53]
¶ 35. If a deer hunting regulation is of “great public interest,” then surely the issue before us today qualifies. In addition to being capable of repetition and evading review, I would hold that whether or not an interim conservator illegally revoked valid student transfers is sufficiently in the public interest to warrant a decision on the merits.

3. The Conservator had no authority to block the Board from voting, and a valid student transfer cannot be revoked unilaterally.

¶ 36. After Courtney appealed, the Court of Appeals held that: (1) an interim conservator had the authority to prevent a school board from voting on a student transfer policy; and (2) a valid student transfer may be revoked unilaterally by either the transferee or transferor school board. I disagree.
A. During a state of emergency, and interim conservator does not have the authority to address a student-transfer issue.
¶ 37. The Court of Appeals erroneously held that an interim conservator — appointed when the governor has declared a state of emergency — has authority to block a school board from voting on student transfers.[54] This is because the power over student transfers during a state of emer *1232 gency is vested in the state Board of Education — not in the conservator.
¶ 38. When the state Board of Education finds a school district is in serious violation of state and federal accreditation standards, Mississippi Code Section 37-17-6(ll)(b) governs.[55] Under the statute, the state Board may request the Governor to declare a state of emergency, and if it does so, the statute sets forth seven actions the state Board may take.[56] One action is to assign an interim conservator, whose authority is set out under Section 37 — 17—6(14).[57] Another is to grant transfers to students.[58] By granting these powers to the state Board, the Legislature specifically has placed the authority over student transfers during states of emergency with the state Board of Education.
¶ 39. The Court of Appeals erroneously looked to the broad powers given to interim conservators under Section 37-17-6(14) to support its holding.[59] Under that section, the conservator is “responsible for the administration, management and operation of the school district....”[60] The statute then provides a nonexhaustive list of actions the conservator may take, one of which is that the conservator may “[a]t-tend[ ] all meetings of the district’s school board and administrative staff.”[61]
¶40. The Court of Appeals majority noted that the statute does not specifically grant the conservator authority to block the school board from voting.[62] Regardless, the majority found that the broad language of the statute grants the conservator “a very high degree of authority,” and the conservator essentially “becomes the Board.”[63] Therefore, the Court of Appeals concluded that conservator Swan had the authority to prevent the board from voting and had the power to interpret the transfer policy himself.[64]
¶ 41. While the Court of Appeals was correct that the statute gives the conservator broad authority, it incorrectly held that the conservator may prevent the school board from voting on the transfer policy. The statute addresses the conservator’s authority relating to county school boards; all the statute says is that the conservator may “attend [ ] all meetings.”[65] The statute grants the conservator no authority to block the school board from voting. Instead, the statute specifically vests the authority over transfers in the state Board of Education, and it is a rule of statutory construction that specific statutory provisions control over general provisions.[66] Therefore, the specific authority granted to the state Board controls over the con *1233 servator’s general authority to attend board meetings. Accordingly, I would reverse the Court of Appeals decision.

B. A school board cannot unilaterally revoke a valid student transfer.

¶ 42. Even if the conservator had the authority to interpret the board policy for himself and block the board from voting, neither he nor the school board had the authority unilaterally to revoke an existing transfer.
¶ 43. Mississippi Code Section 37-15-31 addresses interdistrict student transfers, and it reads as follows:
[U]pon a petition in writing of a parent or guardian ... individual students living in one school district ... may be legally transferred to another school district, by the mutual consent of the school boards of all school districts concerned, which consent must be given in writing and spread upon the minutes of such boards.
If such a transfer is approved by the transferee board, then such decision shall be final. If such a transfer should be refused by the school board of either school district, then such decision shall be final.”[67]
¶ 44. The first question this Court asks when interpreting a statute is “whether the statute is ambiguous. If it is not ambiguous, the court should simply apply the statute according to its plain meaning and should not use principles of statutory construction.”[68] Words not defined in the statute “should be ascribed their ordinary and usual meaning.”[69]
¶ 45. I find no ambiguity in Section 37-15-31. It states in clear terms that the decision to grant or deny a transfer “shall be final.”[70] According to the Oxford Dictionary of English, the word final is defined as an adjective meaning “allowing no further doubt or dispute: the decision of the judging panel is final.”[71] Under the plain and unambiguous language of the statute, a decision to deny or grant a student’s petition for transfer is permanent as to that petition.[72] Also, the statute does not mention revocation-so neither school board has any statutory authority to revoke. This Court interprets statutes “starting with the premise that [the statute] fully expresses whatever the legislature intended to accomplish.”[73]
[presumptions are indulged against ... inadvertent omissions or oversights, or ... against legislation by implication. ... In sum, this Court cannot omit or add to the plain meaning of the statute or presume that the legislature failed to state something other than what was plainly stated.[74]
*1234 The Court of Appeals ignored this principle and wrote the authority to revoke a transfer into a statute which is silent on the issue. But the statute does speak to the authority to grant transfers, and such decisions are “final.”[75] I would therefore hold that a school board cannot unilaterally revoke an existing transfer.
¶ 46. To reach its holding, the Court of Appeals opined that the word “final” did not really mean final, but instead meant “no administrative appeal may be taken.” Even assuming the Court of Appeals was correct on this point (which I do not), the result still should be the same. The statute provides no authority (or even procedure) for revocation. But, as a review of the statutory history reveals, the Court of Appeals was not correct on the point.
¶ 47. The Court of Appeals noted that earlier versions of Section 37-15-31 provided for administrative appeals,[76] and the current version does not.[77] The Court of Appeals stated that the 1987 version of the statute — which allowed an appeal to the state Board of Education — was amended in 1988 to delete the provision for an administrative appeal and make decisions by the local school board “final.” The Court of Appeals then determined that, by amending the statute this way, the Legislature meant the term “final” simply to mean that no administrative appeal may be taken. But the Court of Appeals failed to take into account the whole text of the earlier statute and amendment. Even when the statute allowed an appeal to the State Board of Education, the statute still provided that the decision was final.[78]
¶ 48. In 1962, the statute regarding in-terdistrict transfers required students to petition the board of trustees of the trans-feror and transferee school boards.[79] And if the board rejected the petition, the statute allowed an appeal to the county board of education.[80] If the county board also denied the petition, the State Educational Finance Commission could take the appeal, “whose decision shall be final.”[81] There is no logical way to interpret the word “final” in the 1962 statute to relate to administrative appeals, since all administrative appeals already would have been completed.
¶ 49. There are other examples of prior statutes that refute the Court of Appeals’ interpretation. The statute was amended in 1986 to allow an appeal to the State Board of Education, whose “decision shall be final.”[82] The statute was amended again in 1987, and it read that “if such a transfer should be refused by the school board of either school district or the county board of education, then an appeal may be had to the State Board of Education and ... the decision of the hearing officer shall be final.”[83] In 1989, the statute was amended to remove administrative appeals and stated that, if the transfer was refused by either school board, “such decision shall be final.”[84] And when addressing whose *1235 decision shall be “fínal” as used in these statutes, this Court held that the term “does not mean that there can be no appeal to the courts. It means that the matter is ñnal insofar as action of school authorities is concerned[85]
¶ 50. Since 1962, the word final in the statute could not have meant that “no administrative appeal may be taken.” Instead, it has meant — and continues to mean (as this Court has already interpreted it) — that “the matter is final insofar as action of school authorities is concerned.” [86]
¶ 51. Further, the 1986 and 1987 versions of the statute allowed appeals to the state Board of Education (the final authority in school matters), and specifically provided that the state Board’s decision was final.[87] In that context, “final” could not possibly mean that no administrative appeal might be taken, because there was no higher administrative authority above the state board. The word “final” has been included in the statute at all times, and it has always meant that the decision to grant or deny a petition for transfer was permanent and irrevocable.
¶ 52. In reaching its conclusion that one school board unilaterally could revoke a valid transfer, the Court of Appeals relied on Humble Oil & Refining Co. v. State.[88] I fail to see how this case applies to the issue before us. In Humble Oil, the State of Mississippi and the Board of Supervisors of Adams County filed suit to void an oil and gas lease.[89] The lease was entered into by a previous board, but the performance of the lease would not begin until after the newly elected board’s term began.[90] This Court held that:
[A] board of county supervisors nor the county superintendent may lawfully make a contract binding on their successors, which begins after the terms of office of the board making it has expired. Our view here is not to be confused with contracts effective during the term of one board, and performance starting during the term of office of said board, but extending over into the terms of office of a successor board. Here the terms of office of the members of the board and of the county superintendent of education expired December 31, 1947, yet they attempted to make a contract to go into effect during the term of their successors, preempting the latter from their right and duty to attend to the matter themselves.[91]
¶ 58. The Humble Oil holding is that a board of supervisors cannot enter into a contract if performance begins during the next board’s term.[92] But, so long as the contract begins during the current board term, it is still valid and enforceable— whether or not it binds the successor board.[93] The opinion also dealt only with the validity of leases and contracts. A student transfer is not a lease or contract. And even if it were, a transfer that took place during the term of the board that granted it would still be valid even if it *1236 continued into the next board’s term. Somehow, the Court of Appeals interpreted Humble Oil to mean that, after both school boards agree to grant a petition to transfer — which according to the statute is final — one board can revoke consent, thereby voiding the transfer. But Humble Oil said nothing about revocation of mutual assent, it had nothing to do with student transfers; and I fail to see how it applies here.
CONCLUSION
¶ 54. I think it is clear that the issue here is capable of repetition, yet evading review, and a decision on the merits is in the public interest. As for the merits, I think the statute at issue is clear and unambiguous: (1) the interim conservator lacked authority to prevent the board from voting on the transfer policy; and (2) a decision to grant a student’s transfer petition is final as to that petition, which cannot unilaterally be revoked. I would therefore reverse the judgments of the Court of Appeals and the Circuit Court of Jefferson Davis County and render judgment for the Failses.
WALLER, C.J., CARLSON, P.J., AND RANDOLPH, J., JOIN THIS OPINION.

. Adisso v. Oliver, 666 So.2d 1366 (Miss.1996); Miss. High Sch. Activities Ass'n, Inc. v. Coleman, 631 So.2d 768 (Miss.1994); Bd. of Trs. of Pascagoula Mun. Sch. Dist. v. Doe, 508 So.2d 1081 (Miss.1987); Strong v. Bostick, 420 So.2d 1356 (Miss.1982); Sartinv. Barlow, 196 Miss. 159, 16 So.2d 372 (Miss.1944).

. Misso, 666 So.2d 1366; Strong, 420 So.2d 1356; Sartin, 196 Miss. 159, 16 So.2d 372.

. U.S. Const. art. III, § 2, cl. 1.

. U.S. Parole Comm’n v. Geraghty, 445 U.S. 388, 396, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980).

. Southern Pac. Terminal Co. v. ICC, 219 U.S. 498, 514-15, 31 S.Ct. 279, 55 L.Ed. 310 (1911)

. Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975)

. Id.

. Bd. of School Comm'rs of City of Indianapolis v. Jacobs, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975).

. Id.

. Jeffrey Jackson, 1 Mississippi Civil Procedure, § 1:26 (West 2009) ("The Court has recognized that Mississippi’s mootness doctrine is more relaxed that that enforced in the *1228 federal courts. As before, one reason for this is that Mississippi does not have a Cases or Controversies clause, as does the Federal Constitution. More recently, the court has noted that "Mississippi’s expansion of the exception to the mootness doctrine works to fill the gap left by the unavailability of class actions in Mississippi.” ") (quoting Miss. High School Activities Ass’n, Inc. v. Coleman, 631 So.2d 768 (Miss.1994)).

. Jackson, supra note 10.

. Lauren Waite, The Public Interest Exception to Mootness: A Moot Point in Texas?, 41 Tex. Tech L. Rev. 681, 690-91 (Winter 2009).

. Misso v. Oliver, 666 So.2d 1366, 1369 (Miss.1996).

. The Bd. of Trs. of the Pascagoula Mun. Separate Sch. Dist. v. Doe, 508 So.2d 1081 (Miss.1987).

. Id. at 1082.

. Id. at 1083.

. Id.

. Id. at 1083.

. Id.

. Id.

. Id. at 1084.

. Id.

. Id.

. Id.

. Miss. High Sch. Activities Ass’n, Inc. v. Coleman, 631 So.2d 768 (Miss.1994).

. Id. at 771.

. Id.

. Id. at 772.

. Id.

. Id.

. Id.

. Id.

. Id.

. Id. at 773 n. 2.

. Id. at 773.

. Id. at 778.

. Id. at 773.

. Sartin v. Barlow, 196 Miss. 159, 16 So.2d 372, 376 (1944).

. Id. at 373.

. Id. at 374.

. Id.

. Id. at 375-76.

. Id.

. Id. at 376.

. Id.

. Id. at 377.

. Misso v. Oliver, 666 So.2d 1366, 1369 (Miss.1996).

. Strong v. Bostick, 420 So.2d 1356 (Miss.1982).

.Id. at 1357.

. Id. at 1358.

. Id.

. Id.

. Id.

. Fails, 96 So.3d at 3-5.

. Miss.Code Ann. § 37-17-6 (Supp.2011).

. Miss.Code Ann. § 37-17-6(1 l)(c)(i)-(vii) (Supp.2011).

. Miss.Code Ann. § 37-17-6(1 l)(c)(iii) (Supp.2011).

. Miss.Code Ann. § 37-17-6(1 l)(c)(iv) (Supp.2011).

. Fails, 96 So.3d at 3-5.

. Miss.Code Ann. § 37-17-6(14)(a) (Supp. 2011).

. Miss.Code Ann. § 37-17-6(14)(a)(iv) (Supp.2011).

. Fails, 96 So.3d at 4 ("Mark and Laura correctly point out that the statute does not specifically provide Swan with the power to prevent the Board from voting to clarify the policy.”).

. Id. at 4.

. Id.

. Miss.Code Ann. § 37 — 17—6( 14)(a)(iv) (Supp.2011) (emphasis added).

. Carmona v. Andrews, 357 F.3d 535, 538 (5th Cir.2004); Yarbrough v. Camphor, 645 So.2d 867 (Miss.1994) (citing 1 Sutherland, Statutory Construction § 2022 (3d ed. 1943)).

. Miss.Code Ann. § 37— 15 — 31 (1 )(a) — (b) (Rev. 2007).

. City of Natchez v. Sullivan, 612 So.2d 1087, 1089 (Miss.1992).

. Pearl River Valley Water Supply Dist. v. Hinds County, 445 So.2d 1330, 1334 (Miss.1984).

. Miss.Code Ann. § 37-15-31(1)(b) (Rev. 2007) (emphasis added).

. Oxford Dictionary of English 653 (3d ed. 2010).

. This is not to say of course that a student whose petition is denied is prevented from repetitioning later. Nor is a student whose petition is granted prevented from repetition-ing to transfer back to her original district.

. Jeffrey Jackson & Mary Miller, Encyclopedia of Mississippi Law § 68:63 (West 2001).

. City of Houston v. Tri-Lakes Ltd., 681 So.2d 104, 106 (Miss.1996).

. Miss.Code Ann. § 37-15-3l(l)(b) (Rev. 2007) (emphasis added).

. 1989 Miss. Laws ch. 508 § 2; 1987 Miss. Laws ch. 307 § 16; 1986 Miss. Laws ch. 492 § 96; 1962 Miss. Laws ch. 357 § 1.

. Miss.Code Ann. § 37-15-31 (Rev. 2007).

. 1986 Miss. Laws ch. 492 § 96.

. 1962 Miss. Laws ch. 357 § 1.

. Id. (emphasis added).

. Id. (emphasis added).

. 1986 Miss. Laws ch. 492 § 96 (emphasis added).

. 1987 Miss. Laws ch. 307 § 16 (emphasis added).

. 1989 Miss. Laws ch. 508 § 2 (emphasis added).

. Bd. of Educ. of Benton County v. State Ed. Fin. Comm’n, 243 Miss. 782, 794, 138 So.2d 912, 916 (1962) (emphasis added).

. Id.

. 1986 Miss. Laws ch. 492 § 96; 1987 Miss. Laws ch. 307 § 16.

. Humble Oil & Refining Co. v. State, 206 Miss. 847, 41 So.2d 26 (1949).

. Id. at 853, 41 So.2d 26.

. Id. at 853-54, 41 So.2d 26.

. Id. at 855-56, 41 So.2d 26.

. Id.

. Id.