**BOARD OF EDUCATION OF the CITY OF PEORIA, SCHOOL DISTRICT 150, Plaintiff,**

v.

**ILLINOIS STATE BOARD OF EDUCATION; Donald G. Gill, State Superintendent of Education; Dolores Buckley; Rod Buckley; and David Buckley, Defendants.**

No. 81–1125.

United States District Court, C. D. Illinois.

Feb. 4, 1982.

Julian E. Cannell and Richard D. Rinner, Kavanagh, Scully, Sudow, White & Frederick, P.C., Peoria, Ill., for plaintiff.

Julia Quinn Dempsey, Bernetta D. Bush & David Thompson, State Bd. of Ed., Chicago, Ill., Eugene M. Daly and George E. Goodridge, Asst. Legal Advisors for the Illinois State Bd. of Ed., Springfield, Ill., for Illinois State Bd. of Ed. and Donald Gill.

James Wrigley, Guardianship & Advocacy Commission, Peoria, Ill., for Dolores, Rod & David Buckley.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

Plaintiff asks judicial review of Administrative Order Number SE–123–80, issued June 30, 1981 in the name of the defendant Illinois State Board of Education and signed by defendant Donald M. Gill, as State Superintendent of Education. Copy of that order is attached to the complaint as Exhibit B, and copy of a previous decision by Impartial Hearing Officer Vasil Eftimoff, under date of January 20, 1981, which was reversed by the State order, is attached as Exhibit A. Jurisdiction here is founded on Title 20, United States Code, § 1415(e).

The federal statute (Education of All Handicapped Children Act, 20 U.S.C. § 1401ff.) states that the court "shall receive the records of the administrative proceedings, shall hear additional evidence at

the request of a party,[1] and, basing its decision on the preponderance of the evidence, shall grant such relief as the court considers appropriate." [20 U.S.C. § 1415(e)(2)]

The essence of the dispute is the propriety of a 5-day suspension by plaintiff of 17-year-old, 11th grade high school student David Buckley on November 18, 1980, for "Gross misconduct. Verbal abuse of teacher." There is no serious dispute about the fact of an outburst of intolerable verbal abuse to the teacher on November 17, 1980, of the subsequent events, or of the fact that student Buckley had been previously receiving special educational services from plaintiff for several years, as a learning-disabled child. Following evaluations and staffings during the spring of 1980, it was determined that he be placed in the prevocational work study program and receive learning disabilities resource support for his mainstreamed courses during the 1980/81 school term. One of the mainstream courses was Auto Mechanics, and it was in this class, in objecting to detention after class that day with others for disturbing the class, that the incident of verbal abuse took place.[2] The Impartial Hearing Officer decided that David had violated school policy, that his act was not "perpetrated by his handicap," that he assumed the blame, that his parents did not ask for an available review of the suspension, and that it should not be expunged from his record. The State order reversed the hearing officer's decision and directed that the suspension be withdrawn and expunged from his student records.[3]

Plaintiff urges that this court reverse the latter decision and uphold that of the Impartial Hearing Officer.

The Buckleys, parents and child, through counsel, argue that plaintiff did not demonstrate that David's misconduct was unrelated to his handicap, that he could not be legally suspended, as there was no showing that he was dangerous, and that the plaintiff violated federal law "in attempting to expel David" without regard to his handicapped status.

The State Board and Superintendent also argue that a handicapped student must be dangerous to "terminate educational service" as a disciplinary measure, and that this court has no jurisdiction to disturb the State's Administrative Order, to the extent that it grants David Buckley "greater protection" under Illinois law than would be required under federal law.

In the view of this court, the evidence overwhelmingly preponderates in support of plaintiff's action, as found by the Impartial Hearing Officer. He consciously challenged the teacher's authority in an intolerable manner without any justification. There is nothing whatsoever in the evidence to suggest the contrary. The State Superintendent found as a fact that David "did verbally abuse the instructor"; and the evidence fully supports that conclusion. The State Superintendent otherwise simply recited a good deal of David's history, emphasizing a recently recognized need for "counseling," which he found had not been met in full, and he found as his final fact, without specification, that "David Buckley's rights have not been fully observed." The State Superintendent's pertinent conclusions (that "The hearing officer's decision is reversed," and that "The suspension shall be withdrawn and expunged from his student rec-

---

1. The court has received all records tendered and there has been no request to submit additional evidence.

2. He said to the teacher, "I'm not serving your fucking detention. Fuck you."

3. The hearing officer, the State Superintendent, and the other defendants dealt also with a suggested expulsion of David, which arose from the school principal's announced consideration of such a possible course. This, however, never took place and now serves only to color the

case. It is perfectly clear that David Buckley is not subject to expulsion for the incident of November 17, 1980. Both orders also dealt with continuing evaluation obligations of the plaintiff school district to David Buckley as a handicapped student, under the law and applicable rules. From the briefs and argument here, there appears to be no substantial controversy in this regard. It is assumed that such obligations have been, are being, and/or will be met upon termination of this litigation.

ords.") rest entirely on the most general analysis of the relevant statutes and regulations and the State Superintendent's own view of what he concludes "the courts" have held in interpreting and applying the Act (20 U.S.C. §§ 1401ff.). He recognizes as sound the prior proceedings in this case, and undertakes to perform his assigned tasks in the premises under Section 2–3.38 of the *School Code of Illinois* and the *Rules and Regulations to Govern the Administration and Operation of Special Education*, as promulgated by defendant State Board. This extended verbal exercise is brought into focus on the instant case with the statements:

"At the time of the incident no thorough evaluation of the child's needs for counseling had occurred; and it could not be determined whether this incident had anything to do with his handicapping condition. We must, therefore, like the courts, conclude that an assumption must be made that the long-term detrimental impact of the child's handicapping condition in some way affected the child's behavior and emotional outbursts which precipitated disciplinary action, like the courts, it is our opinion that an exceptional child cannot be excluded from special education as a result of such conduct. Further it is our conclusion consistent with our *Rules*, that the exceptional child can be suspended only when he constitutes a danger to himself, others, the school faculty or the school property. If the exceptional child is to otherwise be suspended even for a brief period, the school district must immediately assume that the placement was inadequately serving the child's needs * * *. (Administrative Order No. SE–123–80—Complaint Exhibit B, p. 5)

This sophistry, in relation to a 17-year-old "exceptional child" with "learning disabilities," who has made it at that age, with school help, through ten previous grades to a mainstream class in the 11th grade, when composed in the process of seeking to prohibit a 5-day suspension of that student for very shameful verbal abuse to a teacher, rests not on "the courts," but solely on the State Superintendent's own fallacious equating of a brief, temporary suspension, with *expulsion* or *termination of special education.*

It is vividly apparent that there was no expulsion from, or termination of, special education here, but rather a five-day disciplinary interruption for a flagrant offense, which was reasonably calculated to teach the "child," who obviously knew better, in an effort to avoid repetition and a consequent necessity for more drastic penalties.

There is absolutely no social or other value in assuming that the "child's" outburst in these circumstances was due to inadequate placement, i.e., the fault of someone other than the offending student. As observed by the Supreme Court of the United States in a landmark case involving school suspension, "Suspension is considered not only to be a necessary tool to maintain order *but a valuable educational device.*" (Emphasis added.) *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 at p. 580 (1975). There can be no doubt whatsoever that, if there was any justification whatsoever for David being in the 11th grade on any terms, he knew better, and that he desperately needed to be brought up short for saying what he did to his teacher. Any theory that some harm of the brief interruption of classroom work could outweigh the educational value of the suspension here can only be recognized as pure imagination, or a feeble attempt at rationalization of a preconceived notion that handicapped students, whatever the degree of handicap, are free of classroom discipline. That is not the law. Surely David had a chance to be a better educated lad after this suspension than he was before. There is some indication that he is, since no repetition is shown. In any event, this court cannot be party to repudiating that sound educational experience. It should contribute to the good of David's future life.

Although the judicial discussion of many difficult problems in this area is of interest, few judicial decisions published to date have any significant bearing on this relatively simple case. None have been cited or

found by the court. *S-1 v. Turlington*, 635 F.2d 342 (5th Cir. 1981), involved *expulsion* of handicapped students for the balance of a school year and the whole following year. It stands for the proposition that, while expulsion from school on valid determinations is a proper disciplinary tool with respect to handicapped students, a complete cessation of educational services is not. There was neither expulsion here, nor termination of educational services.

*Helms v. McDaniel*, 657 F.2d 800 (5th Cir. 1981), was an agreed test, through cross-motions for summary judgment, of the general procedures (local and state) in Georgia, in the light of the federal Act. It is of little help except as noted below.

*Doe v. Koger*, 480 F.Supp. 225 (N.D.Ind. 1979); *Howard S. v. Friendswood Independent School District*, 454 F.Supp. 634 (S.D. Tex.1978); and *Stuart v. Nappi*, 443 F.Supp. 1235 (D.Conn.1978), are all *expulsion* cases, which clearly this is not, since it involves only a single week of suspension. Such a brief period of enforced absence, possibly equivalent to that often caused by a common cold, simply cannot reasonably be described as a change in a handicapped child's educational placement or termination of educational services to him. Yet, simply equating these extremely different concepts and effects, is the only basis for the position of defendants here on the merits, and the only basis for the State Board decision.

Whatever the merit of the State argument that a state can offer "greater protection" to handicapped students than mandated by federal law, if that's what affirming this State decision would be, the *Helms* decision, *supra*, is clear authority for the proposition that the federal court does have jurisdiction in a case such as this, under 20 U.S.C. § 1415(e), to review the decision which reversed that of the Impartial Hearing Officer. As plaintiff points out, if the State agency could thus reverse, without recourse to federal court, a decision of the Impartial Hearing Officer, which simply decided that a five-day disciplinary suspension of a handicapped student was justified and

not the equivalent of expulsion or termination of educational services, then the provision of the federal Act calling for an "impartial" hearing officer (not an employee of the State agency) would be nullified to that extent [20 U.S.C. § 1415(b)(2)]. In any event, the grant of jurisdiction and responsibility in 20 U.S.C. § 1415(e)(2) and (4) seems clear.

The assertions in the Buckley and State Board briefs, as well as in the State Superintendent's decision, requiring some finding that a handicapped student is dangerous before any disciplinary suspension, all rest on regulations relating to expulsion or termination of educational services; and as has been amply demonstrated, this is simply not such a case.

Accordingly, IT IS ORDERED that the decision herein of the State Board of Education and the State Superintendent of Education, dated July 30, 1981 (Administrative Order Number SE–123–80), is REVERSED and the decision of the Impartial Hearing Officer, dated January 20, 1981, is REINSTATED as the law of this case.