**· In re MICHAEL C. and the Coventry School Department et al.**

No. 82–67–M.P.

Supreme Court of Rhode Island.

Jan. 16, 1985.

S. Arlene Violet, Providence, for petitioner.

Bennett R. Gallo, Gunning LaFazia & Gnys Inc., Providence, for respondent.

## OPINION

KELLEHER, Justice.

The focus of this controversy is a sixteen-year-old child named Michael who has been diagnosed as autistic and suffers from organic brain syndrome with psychosis. This litigation was initiated by Michael's mother as next friend of her son. On April 21, 1982, we granted the mother's petition for certiorari in order to review a decision of the Rhode Island Board of Regents for Elementary and Secondary Education (the board) that found the board to be without jurisdiction to entertain appeals from decisions of the Commissioner of Education regarding appropriate educational placement for handicapped children. We disagree with the board's interpretation of its jurisdictional limitations and accordingly reverse.

From June of 1977 until the fall of 1979, Michael was an inpatient in the autistic unit at the Emma Pendleton Bradley Hospital in East Providence, Rhode Island. Prior to that time he had been treated at the J. Arthur Trudeau Memorial Center for retarded children in Warwick, Rhode Island. In the fall of 1979 Michael was enrolled in the Coventry public school system (Coventry) on the recommendation of the staff at Bradley.[1] He remained there, in a class for

---

1. Pursuant to G.L. 1956 (1981 Reenactment) § 16–24–1, Michael is entitled to have Coventry provide or fund an education appropriate to his needs. *See* Regulations of R.I. Board of Re-

the trainable mentally retarded, during the school year 1979–80. At the end of the school year, Michael returned to Bradley for reevaluation following what his mother viewed as some regression in his behavior. On June 17, 1980, Michael was readmitted to Bradley.

When the Coventry school system was notified of this development, a reevaluation of Michael's educational position in Coventry was begun by the Coventry Special Education staff. Eventually, on February 10, 1981, the Coventry staff developed an individualized education program (IEP) for Michael that did not agree with his placement at Bradley, but instead provided for his return to the Coventry public school system and the trainable mentally retarded class at Washington Oak School.

Michael's mother, desirous that her son remain at Bradley with Coventry providing funding, invoked her right to a hearing before an impartial hearing officer to determine whether Coventry's proposed IEP was appropriate for Michael. Regulations of the Board of Regents, § 1, IX, 6.0–7.6.2. Following a decision in favor of the school committee, the mother appealed to the Commissioner of Education. Regulations of the Board of Regents, § 1, IX, 9.0–9.2. The commissioner's designee sustained the decision of the hearing officer. The mother then sought to appeal this decision to the Board of Regents under G.L. 1956 (1981 Reenactment) §§ 16–39–3 and 16–60–4(9)(h) (1984 Cum.Supp.), both providing appellate jurisdiction for the Board of Regents over decisions of the Commissioner of Education.

The Board of Regents rejected the mother's appeal, finding that § 16–39–3 is pre-empted in the area of education for handicapped children by 20 U.S.C.A. §§ 1411–1420, the Education of All Handicapped Children Act passed by Congress in 1975. This act requires a two-tier level of review prior to civil action, precluding, in the opinion of both the Board of Regents and Coventry, the third level of review requested by Michael's mother. From this decision she appeals.

The only issue before the court is the extent to which the federal and state laws in issue conflict, preempting the state-mandated review procedures.

The legislatively mandated procedure in Rhode Island for review of controversies in school matters is governed by chapter 39 of title 16. Section 16–39–2 provides that any person "aggrieved by any decision or doings of any school committee or in any other matter arising under any law relating to schools or education" may appeal an adverse ruling to the Commissioner of Education. Section 16–39–3 allows "[a]ny decision of the commissioner in such matters" to be appealed to the Board of Regents. Accordingly, § 16–60–4(9)(h), defining the powers of the Board of Regents, dovetails with § 16–39–3 and authorizes the board to hear appeals from decisions of the commissioner.[2] Thus, the run-of-the-mill review procedure for school controversies includes three tiers: the local agency, the Commissioner of Education, and the Board of Regents.

In 1975 Congress enacted the Education of All Handicapped Children Act (the act), 20 U.S.C.A. §§ 1411–1420. This act provides federal funding for the education of handicapped children to states that meet

gents for Education, Education for Handicapped Children, adopted April 20, 1977 (hereinafter "Regulations of the Board of Regents"), § 1, II, 1.0, and § 1, III, 1.0.

**2.** This process for review is also described in *Exeter-West Greenwich Regional School District v. Pontarelli*, R.I., 460 A.2d 934, 935–36 n. 2 (1983); *Jacob v. Burke*, 110 R.I. 661, 669–70, 296 A.2d 456, 461 (1972). These cases make it clear that the decision of the Board of Regents is then

reviewable in this court upon a petition for certiorari. We would also point out that in disputes involving a tenured teacher dismissed for cause or a nontenured teacher whose contract has not been renewed, the appellate route is somewhat different. The administrative review procedures for these controversies are identical to those enumerated in §§ 16–39–1 to –3, but under § 16–13–4 a further appeal can be taken to the Superior Court. The Superior Court judgment is also reviewable by certiorari.

the act's requirements. The act makes no attempt to specify educational programs for qualifying states and children, but relies on a "control mechanism * * * of procedural safeguards which provides for parental involvement in educational placement decisions. In effect, the Act guarantees procedures whereby parents may challenge the appropriateness of their child's educational program * * *." Note, *Enforcing the Right to an "Appropriate" Education: The Education For All Handicapped Children Act of 1975*, 92 Harv.L. Rev. 1103, 1103 (1979).

Section 1415 of the act establishes procedural safeguards that must be followed by any state or local agency that receives assistance under the act. It is noteworthy that subsection (b)(1) of § 1415 begins with the language: "The procedures required by this section [§ 1415] shall include, but shall not be limited to * * *." The section then proceeds to enumerate review procedures. Subsection (b)(2) requires that parents be given the opportunity for an "impartial due process hearing" at either the state-educational-agency level or the local level as determined by state law. If the hearing is conducted at the local level, then the party aggrieved may appeal to the state educational agency for an impartial review and an independent decision. Section 1415(c). Subsection (e)(1) requires that the decision at the local level be final unless appealed to the state agency, and that the decision of the state agency be final unless a civil action is brought in accordance with § 1415(e)(2). Coventry argues that this regulatory scheme and the regulations promulgated by the board in accordance with it preclude the normal line of review employed by this state in education matters, shortening the appellate process by one step in the interests of expediency and finality. We cannot subscribe to this view.

■ Coventry points out correctly that as a recipient of federal funds under the act, Rhode Island is bound by the guidelines of the act and cannot follow procedures that conflict with it substantively or

afford lesser protections. *Helms v. McDaniel*, 657 F.2d 800, 804–05 (5th Cir. 1981); *Monahan v. Nebraska*, 645 F.2d 592, 598 n. 10 (8th Cir.1981); *Vogel v. School Board of Montrose R–14 School District*, 491 F.Supp. 989, 991 n. 1 (W.D. Mo.1980). Coventry errs, however, and the board endorsed the error, in concluding that the two statutory frameworks are conflicting when in fact they are not.

■ A careful examination of § 1415 reveals that the requirements enunciated therein establish merely a bare minimum of protective safeguards. This interpretation of the statute is mandated by the language "shall include, but shall not be limited to" appearing at the beginning of § 1415. Congress clearly contemplated a certain amount of flexibility for the states in meeting the requirements of the act, provided the state protections afforded handicapped children do not fall below the level set by Congress. It is axiomatic that a state may therefore provide greater protections without running afoul of the federal framework.

The Rhode Island statutory scheme in issue here affords the handicapped child and his or her parents greater protection than the act requires. It also embodies an important public-policy decision that the resolution of most education-related controversies in this state is best accomplished by a three-level review process. Certainly the federal act never anticipated that handicapped children would be denied the rights enjoyed by nonhandicapped children under state law. This would be the result of the position Coventry urges upon us.

Although it is true, as Coventry points out, that prompt decisions are essential in this area, we decline to favor speed over the full protection of due-process rights. We are also unpersuaded that allowing appeals to the Board of Regents here will contravene the need for expeditious and conclusive determinations. We note that the standard of review to be employed by the board when it reviews decisions pursuant to § 16–39–3 has been set forth in

*Altman v. School Committee of Scituate,* 115 R.I. 399, 404–05, 347 A.2d 37, 40 (1975). In that case, we interpreted the word "review" in § 16–39–3 to limit the jurisdiction of the board to a determination of whether the decision under review is "arbitrary, discriminatory, or unfair." *See also Masyk v. Parshley,* 94 R.I. 282, 288, 180 A.2d 314, 317 (1962).

After reviewing the pertinent statutes, we find that the board erred in refusing to exercise jurisdiction over Michael's appeal. However, the board, perhaps anticipating a contrary opinion by this court and in an attempt to avoid "any future delays," considered the merits of the appeal and made it clear that if it had jurisdiction, it would affirm the decision of the commissioner's designee. The board's foresight is to be commended, and we cannot fault its affirmation of the designee's decision.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the papers certified to this court are ordered returned to the board with our decision endorsed thereon.