762 F.2d 1210
 25 Ed. Law Rep. 141
 SCHOOL BOARD OF the COUNTY OF PRINCE WILLIAM, VIRGINIA, Appellant,
v.
Jerry T. MALONE; Verda J. Malone; Robert A. Malone; Appellees.
SCHOOL BOARD OF the COUNTY OF PRINCE WILLIAM, VIRGINIA, Appellee,
v.
Jerry F. MALONE, Verda J. Malone, Robert A. Malone, Appellants.
 Nos. 84-1347, 84-1385.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 7, 1985.
Decided May 24, 1985.
 
 Kathleen S. Mehfoud, Richmond, Va. (D. Patrick Lacy, Jr., Lacy & Mehfoud, P.C., Richmond, Va., on brief), for appellant.
 Gerard S. Rugel, for appellees.
 Before HALL, ERVIN and SNEEDEN, Circuit Judges.
 SNEEDEN, Circuit Judge.
 
 
 1
 The School Board of Prince William County, Virginia, ("School Board") appeals from a decision of the United States District Court for the Eastern District of Virginia dismissing the School Board's complaint against defendants Jerry T. Malone ("Jerry") and his parents, Verda J. and Robert A. Malone. The School Board filed a complaint in federal district court pursuant to the Education for All Handicapped Children Act of 1975 ("EAHCA" or "the Act"), 20 U.S.C. Secs. 1400-1461 (1976 and Supp.1980), and the Virginia special education statutes, Va.Code Ann. Secs. 22.1-213 to -222, contesting an administrative decision which prohibited the School Board from expelling Jerry Malone from one of the county schools. The district court held that Jerry's expulsion was subject to review in federal court pursuant to the provisions of the EAHCA and that his expulsion was unlawful because the behavior for which he was expelled was caused by his handicap. We agree with the district court and accordingly affirm its decision.
 
 I.
 
 2
 The Prince William County School Board attempted to expel Jerry Malone in March 1983 because of his involvement in the distribution of drugs. Prior to his participation in distributing drugs, Jerry had been identified as a student with a serious learning disability entitled to receive special education services pursuant to the EAHCA. Jerry's learning disability, generally characterized as a problem in language processing, impairs his ability to comprehend and analyze written and oral expression. Under his Individualized Education Program ("IEP"), Jerry was receiving instruction in a self-contained class for learning disabled students. There is some indication in Jerry's IEP for the 1982-83 school year that Jerry was having difficulty behaving appropriately in school. His IEP lists, as one of its short term objectives, "obeying school rules." Joint Appendix at 307. Jerry is also described in various school evaluations as having "borderline" intelligence.
 
 
 3
 In January of 1983, Jerry, then fourteen, was involved in several drug transactions. He acted as a "go-between" for two non-handicapped female students who asked him to purchase "speed" for them from another student whom Jerry knew. Jerry performed this function on three occasions. He apparently made no money for doing so, nor did he take any of the drugs himself.
 
 
 4
 Following his participation in these drug transactions, Jerry was suspended from Rippon Middle School from February 18, 1983, through February 28, 1983, and then placed on furlough, with his parents' consent, until March 1, 1983. On February 23, 1983, a meeting of the Rippon Local School Screening Committee was held to determine whether Jerry's learning disability had caused his behavior. The Committee was composed of a number of professionals involved in the identification and education of handicapped children. Some of the members of the Committee were personally familiar with Jerry. The Committee concluded that there was no causal relationship between Jerry's learning disability and his involvement in distributing drugs. The Coordinator of the Secondary Learning Disability Program for county schools then reviewed and concurred in the finding of the Committee.
 
 
 5
 On February 26, 1983, the principal of Rippon Middle School recommended that Jerry be expelled. The School Board held a hearing on March 16, 1983, which was attended by Jerry, his parents, and their counsel. The Board adopted the recommendation of the principal and voted to expel Jerry for the remainder of the school year.[1]
 
 
 6
 On April 18, 1983, Jerry and his parents requested a due process hearing before a local hearing officer pursuant to provisions of the EAHCA. Jerry was reinstated in school pending that hearing.[2] Following a hearing held on May 2 and 10, 1983, a local hearing officer concluded that Jerry's participation in distributing drugs was related to his learning disability and thus he could not be expelled. The decision of the local hearing officer was reviewed by a state reviewing officer who, on July 25, 1983, affirmed the local officer's decision.
 
 
 7
 The School Board then filed a complaint in federal district court requesting that the court reverse the decision of the state reviewing officer and reinstate the School Board's decision to expel Jerry.[3] The district court heard additional evidence on February 27, 1984. On March 5, 1984, it issued an order dismissing the School Board's complaint. On appeal, the School Board argues that the expulsion of a handicapped child is not reviewable under the provisions of the EAHCA, that handicapped children are not absolutely immune from expulsion, and that Jerry's involvement in the distribution of drugs was not caused by his learning disability.
 
 II.
 
 8
 This Court must first decide whether the expulsion of a handicapped child is subject to review under the provisions of the EAHCA.[4] P.L. 94-142 (codified as amended at 20 U.S.C. Secs. 1400-1461, 1976 and Supp.1980). Some brief background information regarding the provisions of the Act may be helpful. One of the primary purposes of the EAHCA is to ensure the right of every handicapped child to a free appropriate public education ("FAPE"). 20 U.S.C. Sec. 1400(c) and Sec. 1412. Handicapped children are also entitled to be educated in the least restrictive environment ("LRE"). 20 U.S.C. Sec. 1412(5)(B). The LRE concept, popularly referred to as "mainstreaming", means that handicapped children, to the maximum extent appropriate, are to be educated with non-handicapped children. In order to comply with the FAPE and LRE requirements, an Individual Education Program ("IEP") must be formulated to meet each handicapped child's unique educational needs and is to be reviewed at least annually. 20 U.S.C. Sec. 1401(19) and Sec. 1414(a)(5).
 
 
 9
 The EAHCA also provides handicapped children and their parents or guardian with significant procedural protections. 20 U.S.C. Sec. 1415. For example, Section 1415(b)(1)(E) provides that a child's parents or guardian must have the opportunity to present complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." When a complaint has been received, the parents or guardian have the right to an impartial due process hearing. 20 U.S.C. Sec. 1415(b)(2). Section 1415(c) provides for administrative review following the initial hearing. Finally, Section 1415(e)(2) provides that any party aggrieved by the findings and decision made pursuant to the administrative review process has the right to bring a civil action in state or federal court. The reviewing court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. Sec. 1415(e)(2).
 
 
 10
 The EAHCA does not specifically address the issue of whether an expulsion or other disciplinary action should be reviewed under the procedures of the Act. Those federal circuit courts addressing this issue have, however, viewed expulsion as a change in placement subject to review under the Act. Kaelin v. Grubbs, 682 F.2d 595 (6th Cir.1982); S-1 v. Turlington, 635 F.2d 342 (5th Cir.1981), cert. denied, 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981). The district court, citing S-1 v. Turlington, concluded that it had jurisdiction to review Jerry's expulsion, apparently agreeing that the expulsion should be regarded as a change in placement reviewable under the Act's procedures.
 
 
 11
 In S-1 v. Turlington, 635 F.2d 342 (5th Cir.1981), nine handicapped students who were expelled from school alleged violations of their rights under the EAHCA and under 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794.[5] The plaintiffs sought preliminary and permanent injunctive relief to compel state and local officials to provide them with educational services and with the procedural rights required by the EAHCA and by section 504. Id. at 344. The Fifth Circuit held, among other things, that "a termination of educational services, occasioned by expulsion is a change in educational placement, thereby invoking the procedural protections of the EHA." Id. at 348. Noting that the EAHCA and its implementing regulations did not provide any direction on this issue, the court turned to three district court decisions which had found that expulsion constitutes a change in placement requiring adherence to the procedural protections of the EAHCA, Stuart v. Nappi, 443 F.Supp. 1235 (D.Conn.1978); Sherry v. New York State Education Department, 479 F.Supp. 1328 (W.D.N.Y.1979); and Doe v. Koger, 480 F.Supp. 225 (N.D.Ind.1979).[6] The Fifth Circuit found particularly persuasive the district court opinion in Stuart v. Nappi which stated the following:
 
 
 12
 The expulsion of handicapped children not only jeopardizes their right to an education in the least restrictive environment, but is inconsistent with the procedures established by the Handicapped Act for changing the placement of disruptive children.... [T]he use of expulsion proceedings as a means of changing the placement of a disruptive handicapped child contravenes the procedures of the Handicapped Act.
 
 
 13
 Stuart v. Nappi, 443 F.Supp. 1235, 1243 (D.Conn.1978).[7]
 
 
 14
 The Sixth Circuit has indicated its agreement with the Fifth Circuit's opinion in S-1 v. Turlington. See Kaelin v. Grubbs, 682 F.2d 595, 599 (6th Cir.1982). The sole issue on appeal in Kaelin was whether an expulsion is a change of placement within the meaning of the EAHCA. Id. at 595. Citing S-1 v. Turlington and discussing at length the three district court opinions cited therein, the Sixth Circuit held that an expulsion is a change in placement under the EAHCA and that the expulsion of a handicapped student who did not receive the procedural protections of the Act was improper. Kaelin v. Grubbs, 682 F.2d 595 (6th Cir.1982).
 
 
 15
 We agree with the holdings of both the Fifth and Sixth Circuit opinions regarding the necessity of reviewing expulsions of handicapped children pursuant to EAHCA procedures. It would seem indeed ironic for Congress to have provided extensive procedural protections when what may be relatively minor changes are made in a child's IEP, yet not have intended such procedures to be followed when educational services for that child are terminated altogether. The purposes of the Act are clearly better served when EAHCA procedures are followed in the case of an expulsion.[8]
 
 
 16
 We find unpersuasive the School Board's argument that the district court's reliance on S-1 v. Turlington, 635 F.2d 342 (5th Cir.1981), was misplaced. The School Board argues that the district court opinions cited in S-1 v. Turlington are inapposite because those cases involved situations where the expelled child was in an inappropriate placement and the child's behavior resulted from that inappropriate placement. They distinguish the case before us by arguing that Jerry's placement was clearly appropriate and consented to by his parents. Apparently, the School Board's position is that the expulsion of a handicapped child is reviewable under the Act's procedures when the child's behavior results from an inappropriate placement, but is not reviewable when the child is in an appropriate placement, despite the fact that the child's behavior may have been caused by his learning disability.[9]
 
 
 17
 We disagree with the School Board's position. First, we do not believe that Stuart v. Nappi, 443 F.Supp. 1235 (D.Conn.1978); Sherry v. New York State Education Department, 479 F.Supp. 1328 (W.D.N.Y.1979); and Doe v. Koger, 480 F.Supp. 225 (N.D.Ind.1979) may be read so narrowly. Second, the School Board cannot avoid the holdings of S-1 v. Turlington, 635 F.2d 342 (5th Cir.1981), and Kaelin v. Grubbs, 682 F.2d 595 (6th Cir.1982), by simply arguing that both the Fifth and Sixth Circuits misconstrued the district court cases on which they relied.
 
 
 18
 Finally, we find the position of the School Board regarding when an expulsion may be reviewed under the Act to be illogical. The School Board would have the availability of review under the Act turn on whether the child is in an appropriate or inappropriate placement. The proper way to make such an initial determination, however, is to follow the procedures of the Act and allow professionals in the special education field, subject to review, to decide whether a child's placement is proper. To allow the School Board alone to make this determination is to run the risk of seriously undermining the purposes of the Act. A school board would be able to expel a child and preclude review under EAHCA procedures by simply determining that the child's educational placement was appropriate--a determination which the Act clearly intends to be made by professionals in the special education field with procedural rights given to the child and his parents or guardian. The School Board's own formulation of the issue makes it clear that expulsion may be viewed as a placement issue and, as such, should be reviewed under the provisions of the Act.
 
 III.
 
 19
 We turn next to the issue of whether Jerry's participation in distributing drugs was causally related to his learning disability. As indicated earlier, the Rippon Local School Screening Committee and the School Board concluded that Jerry's behavior was not caused by his learning disability and thus decided to expel him. Both the local hearing officer and the state reviewing officer, however, determined that there was a causal relationship between Jerry's disability and his involvement in drug distribution. The district court agreed with the findings of the state administrative officers and explained the connection between Jerry's behavior and his learning disability as follows:
 
 
 20
 A direct result of Jerry's learning disability is a loss of self image, an awareness of lack of peer approval occasioned by ridicule or teasing from his chronological age group. He can't keep pace with these peers. He is ostracized from their group. He doesn't understand their language. These emotional disturbances make him particularly susceptible to peer pressure. Under these circumstances he leaps at a chance for peer approval. He is a ready "stooge" to be set up by peers engaged in drug trafficking.
 
 
 21
 Joint Appendix at 20-21. The district court also determined that, while Jerry probably understood that involvement with drugs was wrong, his learning disability "prevented him from comprehending or giving long term consideration to the consequences of his actions." Joint Appendix at 20.
 
 
 22
 Before determining whether the district court's conclusion is clearly erroneous, we must address two issues raised by the School Board. The first issue is whether the district court utilized an incorrect test in reaching its factual conclusion. The School Board argues that the district court should have determined whether Jerry's behavior resulted from an inappropriate placement, not whether his behavior resulted from his learning disability.[10] The Board argues that the former is the correct test under the case law and under the EAHCA, since the Act is concerned with the appropriate placement of a learning disabled child.
 
 
 23
 We conclude that the district court utilized the proper test. As discussed earlier, the EAHCA does not explicitly address the issue of whether an expulsion should be reviewed under its procedures. Consequently, the Act also does not explicitly address what test should be utilized by school authorities, administrative officers, and the courts when reviewing an expulsion under the EAHCA. The test which has developed under the case law, however, is whether the behavior for which the child was expelled was caused in some way by his handicap. Both the Fifth and Sixth Circuits have held that, before a handicapped child may be expelled, there must be a determination of whether the child's disruptive behavior was caused by his handicap. Kaelin v. Grubbs, 682 F.2d 595, 602 (1982); S-1 v. Turlington, 635 F.2d 342, 348 (5th Cir.1981) cert. denied, 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981). Both decisions cite Doe v. Koger, 480 F.Supp. 225 (N.D.Ind.1979), which stated the following:
 
 
 24
 Between a handicapped child and any other child, the distinction is that, unlike any other disruptive child, before a disruptive handicapped child can be expelled, it must be determined whether the handicap is the cause of the child's propensity to disrupt. And this issue must be determined through the change of placement procedures required by the Handicapped Act.
 
 
 25
 Id. at 229. While there is some language in Doe v. Koger which could be read to support the position of the School Board, we agree with the Fifth and Sixth Circuits' holding that there must be a determination of whether the child's behavior was caused by his handicap.[11] To do otherwise would be to expel a child for behavior over which he may have little or no control. This would hardly be a fair result or one in keeping with the purposes of the EAHCA. Furthermore, a finding that the child's unacceptable behavior was caused by his handicap would suggest consideration of some change in the child's educational placement or a less harsh form of disciplinary action, rather than the severe sanction of expulsion.
 
 
 26
 The second issue raised by the School Board is whether the district court improperly gave deference to the decision of the state hearing officers. The School Board argues that, under Board of Education v. Rowley, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), the district court should have given deference to the decision of the School Board.
 
 
 27
 The district court briefly discussed the Supreme Court's decision in Rowley, pointing out that the Court had held that the "preponderance of the evidence" standard found in 20 U.S.C. Sec. 1415(e)(2) was not an invitation to the courts to substitute their own ideas of sound educational policy for those of school authorities. The district court, however, viewed the decision of the state hearing officers, reviewing the decision of the School Board pursuant to federal and state statutes and regulations, as the decision to which deference was due. Joint Appendix at 19. The following passage from Rowley, specifically stating that due weight is to be given to state administrative proceedings, indicates that the district court was correct:
 
 
 28
 [T]he provision that a reviewing court base its decision on the "preponderance of the evidence" is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review. The very importance which Congress has attached to compliance with certain procedures in the preparation of an IEP would be frustrated if a court were permitted simply to set state decisions at nought. The fact that Sec. 1415(e) requires that the reviewing court "receive the records of the [state ] administrative proceedings " carries with it the implied requirement that due weight shall be given to these proceedings.
 
 
 29
 Id. at 206, 102 S.Ct. at 3051, 73 L.Ed.2d at 712. (brackets in original; emphasis added). The district court properly gave due weight to the results of the state administrative proceedings. To give deference only to the decision of the School Board would render meaningless the entire process of administrative review. Roncker on Behalf of Roncker v. Walter, 700 F.2d 1058, 1062 (6th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 196, 78 L.Ed.2d 171 (1983). That is certainly not a result contemplated by the Act.
 
 
 30
 The district court also stated that, even without giving deference to the decision of the state reviewing officer, the additional testimony which it heard from two education experts persuaded the court that Jerry's behavior was caused by his learning disability. Section 615(e)(2) of the Act specifically provides that a reviewing court may hear additional evidence not heard by state administrative officials and that the court should base its decision on the "preponderance of the evidence." 20 U.S.C. Sec. 1415(e)(2). While the Supreme Court in Rowley made it clear that due weight should be given to the results of the state administrative proceedings, the Court recognized that Congress intended the courts to make "independent decision[s] based on a preponderance of the evidence." Board of Education v. Rowley, 458 U.S. 176, 205, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690, 711 (1982), quoting S.Conf.Rep. No. 94-455, p. 50 (1975) reprinted in 1975 U.S.Code Cong. & Ad.News 1425, 1503. The district court has made an independent factual determination which this Court should not overturn unless we find it to be clearly erroneous. Matthews By Matthews v. Davis, 742 F.2d 825, 831 (4th Cir.1984).
 
 
 31
 The district court had before it an extensive administrative record, the deposition of an expert in the treatment of learning disabled adolescents, and the additional testimony it heard during a hearing held on February 27, 1984. The district court, as trier of fact, concluded that Jerry's participation in distributing drugs was caused by his handicap. Joint Appendix at 20. We cannot say, having reviewed the evidence, that this finding of the district court was clearly erroneous.
 
 IV.
 
 32
 The School Board raises the issue of whether handicapped students are immune from expulsion. We decide today that an expulsion is a change in placement triggering the procedural protections of the EAHCA and that, pursuant to these procedures, a determination must be made whether the child's unacceptable behavior was caused by his handicap. A necessary corollary of this holding is that if, following EAHCA procedures, it is determined that the child's behavior was not caused by his handicap, that child may then be expelled. Since we find today that, under the particular circumstances of this case, Jerry Malone may not be expelled from Prince William County schools, we decline to discuss whether some level of educational services must be continued to a lawfully expelled handicapped child, and if so, to what extent.
 
 
 33
 We also decline to reach the issues raised on cross-appeal by Jerry and his parents. Since we are affirming the decision of the district court dismissing the School Board's complaint, we see no reason to decide whether additional issues under Sec. 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794, and under the EAHCA could have been raised had we remanded the case to the district court.[12]
 
 The decision of the district court is
 
 34
 AFFIRMED.
 
 
 
 [1]
 According to the School Board, Jerry was eligible to apply for readmission to school for the fall of 1983. Brief of Appellant at 7. There was, however, no guarantee that he would be admitted at that time. That decision apparently remained within the discretion of the School Board. Joint Appendix at 155-56
 
 
 [2]
 Jerry was reinstated in school on April 18, 1983, and apparently is currently enrolled in school. Joint Appendix at 17
 
 
 [3]
 In its complaint, the School Board argued that the state reviewing officer: (1) exceeded his authority in setting aside the determination of the Committee that Jerry's misconduct was unrelated to his handicapping condition; (2) erred in finding that the misconduct was, in fact, related to the handicapping condition; (3) erred in holding that handicapped children may not be expelled from school; (4) exceeded his authority by revoking the School Board's expulsion of Jerry; and (5) erred in requiring the School Board to continue providing Jerry with a free appropriate education. Joint Appendix at 4-5
 
 
 [4]
 Although the School Board argues that an expulsion is not a change in placement requiring review under EAHCA procedures, the Board has thus far complied with the procedural requirements of the Act. The district court specifically determined that the Board had done so. Joint Appendix at 17-18
 
 
 [5]
 S-1 v. Turlington, 635 F.2d 342 (5th Cir.1981), apparently has been disapproved by the Supreme Court to the extent that it allowed a claim under Sec. 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794, and under the EAHCA to protect the same substantive right guaranteed by the EAHCA. See Smith v. Robinson, --- U.S. ----, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). The Court stated in pertinent part the following:
 [T]here is no doubt that the remedies, rights, and procedures Congress set out in the EHA are the ones it intended to apply to a handicapped child's claim to a free appropriate public education. We are satisfied that Congress did not intend a handicapped child to be able to circumvent the requirements or supplement the remedies of the EHA by resort to the general antidiscrimination provision of Sec. 504.
 Id. at ----, 104 S.Ct. at 3473, 82 L.Ed.2d at 769.
 
 
 [6]
 In Doe v. Koger, the district court's decision not to allow attorneys' fees under 42 U.S.C. Sec. 1988 was appealed to the Seventh Circuit. The court of appeals upheld the district court's denial of attorneys' fees, finding that Sec. 1983 was superfluous to the relief which the plaintiff sought pursuant to the EAHCA and thus could not serve as a basis for an award of attorneys' fees under Sec. 1988. Doe v. Koger, 710 F.2d 1209 (7th Cir.1983)
 
 
 [7]
 Stuart v. Nappi, 443 F.Supp. 1235 (D.Conn.1978), may be read as prohibiting expulsion of handicapped children altogether. Id. at 1242-43. That is not the position we adopt here today
 
 
 [8]
 We do not decide today whether a temporary suspension of brief duration may be regarded as a change in placement reviewable under the Act's procedures. A case which directly confronts this issue, however, is Board of Education of the City of Peoria v. Illinois State Board of Education, 531 F.Supp. 148 (C.D.Ill.1982). In Peoria, the district court held that a five-day suspension could not be regarded as a change in placement or a termination of educational services. Id. at 151. Also, the Sixth Circuit in Kaelin v. Grubbs, 682 F.2d 595 (6th Cir.1982), stated that "it is well-settled that a handicapped child may be suspended temporarily without employing the procedures in 20 U.S.C. Sec. 1415." Id. at 602
 
 
 [9]
 The School Board maintained at oral argument that, while the School Board's decision to expel a handicapped student should not be reviewed under the provisions of the EAHCA, the Board's decision could be reviewed by a state court pursuant to Sec. 22.1-87 of the Virginia Code. Section 22.1-87 reads as follows:
 Sec. 22.1-87. Judicial review.--Any parent, custodian, or legal guardian of a pupil attending the public schools in a school division who is aggrieved by an action of the school board may, within thirty days after such action, petition the circuit court having jurisdiction in the school division to review the action of the school board.
 Such review shall proceed upon the petition, the minutes of the meeting at which the school board's action was taken, the orders, if any, of the school board, an attested copy of the transcript, if any, of any hearing before the school board, and any other evidence found relevant to the issues on appeal by the court. The action of the school board shall be sustained unless the school board exceeded its authority, acted arbitrarily or capriciously, or abused its discretion.
 Va.Code Ann. Sec. 22.1-87 (Supp.1984). While we decide today on other grounds that an expulsion must be reviewed pursuant to the provisions of the EAHCA, it should be noted that the review process provided for in Sec. 22.1-87 is manifestly not comparable to that provided for in Sec. 1415 of the EAHCA or in Sec. 22.1-214 of the Virginia Code dealing with special education programs.
 
 
 [10]
 We note, however, that whether Jerry's behavior was caused by his learning disability was the test thought to be applicable throughout the decision making process below, from the initial decision of the Rippon Local School Screening Committee through the decision of the state reviewing officer
 
 
 [11]
 Doe v. Koger, 480 F.Supp. 225 (N.D.Ind.1979), also spoke in terms of determining whether the handicapped child had been appropriately placed. Id. at 229. We believe that a determination of whether the child's behavior was caused by his handicap may necessarily involve an inquiry into whether he was appropriately placed
 
 
 [12]
 Jerry and his parents, on cross-appeal, raise the issue of whether they may present, for the first time at the district level, evidence regarding a new handicap of emotional disability to support an "affirmative defense" under Section 504 of the Rehabilitation Act. 29 U.S.C. 794. The district court did not reach the Sec. 504 issue, specifically stating that it did not do so because of its resolution of the case under the EAHCA. Joint Appendix at 14. Moreover, this cross-appeal is raised as a conditional cross-appeal. Jerry and his parents argue that, should this Court find that the district court erred in entering judgment in their favor, the case should be remanded so that they may offer evidence to establish a new handicap under Sec. 504. Since we affirm the decision of the district court, we do not reach the Sec. 504 issue and therefore do not analyze whether the cross-appellants have a claim under Sec. 504 in light of Smith v. Robinson, --- U.S. ----, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984)
 Jerry and his parents also raise on cross appeal the issue of whether the district court should have received evidence, under the EAHCA, establishing a new handicap of emotional disability. The district court refused to allow the evidence because the existence of this handicap had not been considered in the administrative proceedings below. The district court did, however, receive new evidence regarding the emotional ramifications of Jerry's existing handicap, his learning disability. Again, this cross-appeal issue is raised conditionally, to be addressed if we find that the district court erred. We decline to reach this issue.