508 So.2d 1081 (1987)
The BOARD OF TRUSTEES OF the PASCAGOULA MUNICIPAL SEPARATE SCHOOL DISTRICT
v.
Joe DOE, et al.
No. 56674.
Supreme Court of Mississippi.
May 20, 1987.
*1082 Raymond L. Brown, Brown & Associates, Robert W. Wilkinson, Megehee, Williams & Mestayer, Pascagoula, for appellant.
J. Brice Kerr, Pascagoula, for appellees.
Before HAWKINS, P.J., and PRATHER and GRIFFIN, JJ.
HAWKINS, Presiding Justice, for the Court:
Today, for the first time, we consider the rights of a handicapped child under the Education for All Handicapped Children Act (EHA) passed by Congress in 1975 and adopted by Mississippi through regulations established by the Mississippi Department of Education. This child was expelled from the Pascagoula Municipal Separate School District for disciplinary reasons.
The Education of the Handicapped Act, 20 U.S.C. § 1401, et seq. (1976 Ed. and Supp. IV) provides federal money to assist state and local agencies to educate handicapped children. Before a state can receive funds under the act, it must prepare a plan establishing procedures in compliance with the act. 20 U.S.C., § 1412 (et seq.); Hendrick Hudson District Board of Education v. Rowley, 458 U.S. 176, 181, 102 S.Ct. 3034, 3038, 73 L.Ed.2d 690, 696 (1982).
*1083 Mississippi adopted such a plan in 1983 and revised the plan at the direction of the federal government in 1986. State Plan for Fiscal Years 1984-86; State Plan for Fiscal Years 1987-88, Mississippi State Department of Education.
The EHA requires procedural protections which allow handicapped children to challenge their education programs. 20 U.S.C. § 1415. For example, § 1415(b)(1)(E) gives the parents an opportunity to challenge the educational placement of their child through an impartial due process hearing. A hearing officer appointed by the State Department of Education conducts a hearing at the local school district. 20 U.S.C. § 1415(b)(2), State Plan for Fiscal Years 1984-86, p. 15.
In 1984 parties aggrieved with the decision of the hearing officer could appeal the decision of the hearing officer to the state review team. The review team was appointed by the assistant director of instruction in charge of special education and review team members could not be employees of the State Department of Education. State Plan for Fiscal Years 1984-86, Part 2, Section IV(5) and (8)(L), pp. 15, 16. Currently the State Plan provides that aggrieved parties can appeal the decision of the state level hearing officer directly to state and federal courts. State Plan for Fiscal Years 1987-88, p. 21; see also 20 U.S.C. § 1415(e)(2).

FACTS
The facts in this case are undisputed. On Friday, March 26, 1984, school officials at the Pascagoula High School Annex caught John Doe[1] with six hand-rolled marijuana cigarettes and two knives at school. At the time John was a learning disabled tenth grader subject to EHA.
John was first suspended from school for five days. On April 9 the Board of Trustees of the District by committee held a disciplinary review hearing to consider further punishment for John. The committee heard comments from John, Mr. and Mrs. Doe, and school authorities. John said he got the marijuana from another boy, and that he traded the marijuana for knives, which he collected. He knew that it was illegal to have the knives and marijuana at school, but he did not think about the rules when he broke them. Following the hearing, the committee recommended by unanimous vote to expel John for the remainder of the school year and that he receive no credits for the 1983-84 school year. The district offered John a homebound teacher during his expulsion.
The Does appealed the school disciplinary committee's decision to an impartial due process hearing. See: 20 U.S.C. 1415 (1975). The Mississippi Department of Education appointed Dr. J. Larry Tyler to serve as hearing officer. The Does' attorney, J. Brice Kerr, offered testimony and written evidence to show that John was not violent in school. Kerr also attempted to establish a link between John's learning disability and his misconduct in school.
Raymond Brown, attorney for the school, appeared and presented evidence through the testimony of school administrators and teachers. The school argued that John was informed of the school rules and that this violation of school board policy posed a potential threat to the welfare and safety of the student body. The school district argued that John's misconduct was not related to his learning disability, and pointed out that the school system offered John a homebound teacher in compliance with the Education for All Handicapped Children Act. The school asked the hearing officer to affirm John's expulsion and withhold academic credit for the 1983-84 school year.
The hearing officer was of the view that the school system was limited in its disciplinary options for handicapped students, and that expulsion was permitted only where "the child's behavior represents an immediate physical danger to him/herself and others or constitutes a clear emergency within the school such that removal is essential." He concluded that John was not an immediate *1084 danger to other students or did not present a clear emergency to the school, and also that the issue of John's expulsion was moot because he had completed the 1983-84 school year.
The school appealed the hearing officer's decision to the education state review team, which affirmed the hearing officer's decision on July 11, 1984, and also determined that John should receive credit for passing grades he made while his case was appealed.
The school appealed the review team's decision to the chancery court of Jackson County. The chancellor dismissed the school board's suit, ruling that the EHA pre-empted state courts from exercising jurisdiction. The school board appealed.
On April 6, 1987, the appellee, John Doe, et al., filed a motion before this Court to dismiss the school's appeal as moot. In that motion John pointed out while this case was pending this appeal, he successfully graduated from high school in 1986 and argued that all issues regarding his expulsion for the school year 1983 are now moot.

LAW

I.
20 U.S.C. § 1415(e)(2) provides that any party aggrieved by the findings of an administrative hearing may bring an action in any state court of competent jurisdiction or in a district court of the United States. The chancellor erred when he dismissed the school board's appeal for lack of jurisdiction. See Town of Burlington v. Dept. of Education for the Commonwealth of Massachusetts, 736 F.2d 773, 784 (1st Cir.1984); S-1 v. Turlington, 635 F.2d 342, 348 (Fla. 1981); In re Michael C., 487 A.2d 495 (R.I. 1985).

II.

IS THIS PRESENT APPEAL MOOT BECAUSE JOHN GRADUATED FROM HIGH SCHOOL PENDING THE APPEAL OF HIS CASE?
The U.S. Supreme Court commented on claims under the EHA which seem moot; "judicial review invariably takes more than nine months to complete, not to mention the time consumed during the preceding state administrative hearing. Courts have jurisdiction to grant relief under the act when the issues involved are capable of repetition, yet (evading) review." Hendrick Hudson District Board of Education v. Rowley, 458 U.S. at 186-87 n. 9, 102 S.Ct. at 3040-41 n. 9 (citations omitted).
We have recognized the importance of addressing issues which avoid resolution because the challenged action is too short in duration to be fully litigated. Strong v. Bostick, 420 So.2d 1356, 1359 (Miss. 1982).
"Even if later events have reduced the practical importance of a case to the parties, the question is whether the allegedly wrongful behavior could not reasonably be expected to recur." (cites omitted) Sherry v. New York State Dept. of Education, 479 F. Supp. 1328, 1334 (D.C.West.Dist.N.Y. 1979). "Moreover, the performance of a particular act sought to be enjoined may moot the issue of an injunction, but where there is a likelihood that the act complained of will be repeated, the issues remain justiciable and a declaratory judgment may be rendered to define the rights and obligations of the parties." 6 A Moore's Federal Practice, § 57.13; see: United States v. Phosphate Export Ass'n., 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968).
On June 6, 1984, the hearing officer, found that the issue of John's expulsion was moot because he had completed the remainder of the 1983-84 school year. This holding, however, prevents a school from expelling a handicapped child because the school is required to keep the child in school pending review of the child's case. 34 C.F.R. § 300.513 (1980). The schools have a duty to maintain a safe learning environment to further the educational processes of other students. To hold that this case is now moot would, in effect, prohibit school districts from disciplining a handicapped child because the length of time required to appeal a case under the act. *1085 Consequently, we must hold John's case is not moot and address the issue.

III.

CAN THE SCHOOL SYSTEM EXPEL A HANDICAPPED CHILD WHO DISRUPTS THE EDUCATIONAL PROCESS OF OTHER CHILDREN?
The EHA limits the school's power to remove handicapped children from school. 20 U.S.C. § 1415 (1975). The act distinguishes handicapped students from any other disruptive child in that before a disruptive handicapped child can be expelled, "it must be determined whether the handicap is the cause of the child's propensity to disrupt." S-1 v. Turlington, 635 F.2d 342, 348 (5th Cir.1981). "A finding that the child's unacceptable behavior was caused by his handicap would suggest consideration of some change in the child's educational placement or a less harsh form of disciplinary action, rather than the severe sanction of expulsion." School Bd. of Prince William County, Va. v. Malone, 762 F.2d 1210 (4th Cir.1985).
As always, schools retain the responsibility to ensure a safe school environment. S-1 v. Turlington, 635 F.2d at 348 n. 9. The school may expel a handicapped student based on a reasonable conclusion that the student would disrupt the educational process of other students "so long as the school provides the handicapped student with other quality educational services" during the expulsion period. Jackson v. Franklin County School Board, 606 F. Supp. 152, 154 (S.D.Miss. 1985), affirmed in 765 F.2d 535 (5th Cir.1985); S-1 v. Turlington, supra.
The test developed under case law which should be utilized by school authorities, administrative officers, and the courts when reviewing an expulsion under the EHA is "whether the behavior for which the child was expelled was caused in some way by his handicap." School Board of Prince William County, Va. v. Malone, 762 F.2d at 1216-17; S-1 v. Turlington, 635 F.2d at 348. But, "a determination that a handicapped student knew the difference between right and wrong is not tantamount to a determination that his misconduct was or was not a manifestation of his handicap." S-1 v. Turlington, 635 F.2d at 346.
The district indicated in oral argument that they appealed the chancellor's decision to establish its disciplinary powers under the EHA. Specifically, the district asks us to recognize their need to discipline handicapped students who disrupt a educational process of other students. We acknowledge this need and recognize the school system's restricted power to expel handicapped students.
Our decision, however, is more important for its precedential value than how it affects John, who graduated from high school in 1986. He can no longer disrupt the educational pursuits of other students by violating school rules. Denying John credit for the 1983-84 school year and taking away his diploma could not substantially affect the school's need to discipline students. Consequently, we reverse the chancellor's dismissal on the jurisdictional basis only and render so as to inform school authorities, administrative officers, and courts how to proceed under this complicated act.

IV.
The Education for the Handicapped Act provides for a unique level of review of administrative hearings.
First the trial court must determine whether the administrative hearing officer complied with the procedures of the act as set out in 20 U.S.C. § 1415, and which are reiterated in the State Plan.
Next the trial court must address the substantive issues in the case. The act, however, calls for a different review of administrative hearing than the "substantive evidence" test or the "abuse of discretion" test typically used in reviewing administrative decisions. Town of Burlington v. Dept. of Education for the Commonwealth of Massachusetts, 736 F.2d *1086 773, 788 (1st Cir.1984); Roncker v. Walter, 700 F.2d 1058, 1061 (6th Cir.1983).
20 U.S.C. § 1415(e)(2) of the act provides:
In any action brought under this paragraph, the court shall receive the records of administrative proceedings, shall hear additional evidence at the request of a party, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. [Emphasis added]
Courts reviewing administrative proceedings under the act should not "substitute their own notion of sound educational policy for those of the school authorities they review." Rowley, supra, 102 S.Ct. at 3015. The act, however, allows the trial judge to exercise his discretion to entertain additional evidence in reviewing the hearing officer's decision. "This ... does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony; this would be entirely inconsistent with the usual meaning of `additional'. We are fortified in this interpretation because it structurally assists giving due weight to the administrative proceedings, as Rowley requires. Rowley, 458 U.S. 206, 102 S.Ct. at 3051." Town of Burlington v. Dept. of Education for Massachusetts, 736 F.2d at 790. Id.
The trial court must make an independent ruling based upon a preponderance of the evidence, but the act contemplates that the source of evidence generally will be the administrative hearing record, with some supplementation at trial, if requested, and necessary. The reasons for supplementing record will vary; they might include gaps in the administrative transcript, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing. The starting point for the determination of what additional evidence should be received, however, is the record of the administrative proceeding. Thus, the procedure followed by a trial court falls "something short of a trial de novo." Colin K. by John K. v. Schmidt, 715 F.2d 1, 5 (1st Cir.1983).
After reviewing the administrative hearing record and hearing additional evidence, if required, the trial judge should determine whether the child's behavior is caused by his handicap, and if it was not, whether the school offers other educational services during the expulsion period. The burden of proving that the hearing officer erred is on the appealing party. Rowley, 458 U.S. at 205, 102 S.Ct. at 3050, 73 L.Ed.2d at 711; School Board of Prince William County, Va. v. Malone, 762 F.2d at 1218; Town of Burlington v. Dept. of Education for the Commonwealth of Massachusetts, 736 F.2d at 794.
We, in turn, will not overturn a lower court decision under the act unless it is manifestly wrong. Smith v. Todd, 464 So.2d 1155 (Miss. 1985); Gold v. LaBarre, 455 So.2d 739 (Miss. 1984); Cheek v. Ricker, 431 So.2d 1139 (Miss. 1983); see also, Jackson v. Franklin County School Board, 765 F.2d 535, 539 (5th Cir.1985); School Board of Prince William County, Va. v. Malone, 762 F.2d at 1218.
REVERSED AND RENDERED.
WALKER, C.J., and ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] The chancellor removed the name of the minor involved in this suit from public records. For the purpose of this opinion, we will refer to the minor as John Doe.